MARY FLOOD, as Administratrix, etc., Respondent, *v.* THE
WESTERN UNION TELEGRAPH COMPANY, Appellant.

In an action to recover damages for the death of F., plaintiff's intestate,
the following facts appeared: F. had been in the employ of defendant,
a telegraph company, several years, and part of the time as a line-man.
The line-men had frequent occasion to climb the poles and work about
the arms.  A cross-arm upon the outer end of which F. sat engaged in
pounding with a hammer, broke under his weight, and he fell to the
ground and was killed.  The arm had been in use for about six years.
It was of the material, size and apparent strength and safety then in use
by all telegraph companies.  Defendant had a system of inspection of
the arms when purchased, and it did not appear that there was anything
in the external appearance of this one when new which indicated any
defect or weakness, or that there was any defect therein, discernable by
any ordinary inspection.  *Held,* that plaintiff was not entitled to recover.

(Argued February 2, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department, entered upon an order
made July 7, 1891, which affirmed a judgment in favor of
plaintiff entered upon a verdict and affirmed an order denying
a motion for a new trial.

The following is the opinion in full:

" The plaintiff seeks to enforce liability upon the defendant
for the death of the intestate because of its negligence as to
the cross-arm which broke under his weight.  We have care-
fully read and weighed the evidence contained in this record
and are unable to find any showing culpable negligence ade-
quate to sustain this judgment.

" The defendant did not insure the safety of its employes.  It
was bound only to use reasonable and ordinary care to provide
for them a safe place to do their work, and they assumed the
ordinary risks of the employment in which they were engaged.
The cross-arms on telegraph poles, manifestly from their usual
size and strength, are not intended to bear the whole weight
of any person, and yet the evidence shows that persons engaged
in fixing them and placing wires upon them, do sometimes rest
their weight upon them.  It must always be a hazardous ven-

ture for a man to sit on the outer end of one of these cross-arms engaged in pounding near the end with a hammer. When the arm is new and perfect this may be done with safety. But it must always be attended with great danger, and it is unnecessary, as the work can be done without resting the whole weight upon the arm.

" There was no negligence in furnishing and putting up this arm originally. It was of the material and of the size and apparent strength and safety then in use by all telegraph companies, and so far as appears, such arms have been found adequate for every purpose. For some time before the accident the defendant had been using larger and stronger arms to carry heavier wires, and only for that purpose. There was a system of inspection for the arms when purchased, and it does not appear that there was anything in the external appearance of this arm when new which indicated any defect or weakness, or that there was any defect therein discernable by any ordinary inspection.

"This arm had been in use for about six years, and during all that time had perfectly answered its purpose. There was no proof showing how long such an arm ought to last or be used. The defendant had a system of inspection which appears to have been all that was practicable. Its inspectors went along the line of telegraph poles and wires, and carefully looked at them and tried the poles to see if they were still strong and adequate. They were provided with arms so that if they discovered any that were insufficient they could replace them. They were not expected to climb up every pole and examine the arms thereon. Such an inspection would be manifestly impracticable and unnecessary. The linemen all discharge their duties in the day-time. They have frequent occasion to climb the poles and work about the arms, and obviously they are the persons who are expected to see the condition of the arms, and if they find them insufficient to replace them, or to report the fact. It is the obvious duty of every lineman before going upon one of these arms many feet above the earth to inspect it for his own safety.

"The intestate had been in the employment of the defendant

for several years, part of the time as foreman of a gang of men engaged in inspecting the defendant's lines, and part of the time as a lineman engaged in the ordinary duties pertaining to that employment. He had all the opportunity which any inspector could have to know the condition of this arm, having frequently inspected that portion of the defendant's line where this arm was. He saw it when he went upon it, and careful inspection was the first thing then suggested to him. He knew that he was in a place of danger, and thus was bound before resting his weight upon the arm to examine it to see if it was sound and probably adequate to support him. He knew precisely how the defendant inspected its poles and the arms on them, and that it was not its custom to cause the arms on the polls to be inspected by someone climbing up the polls, and hence as to him carelessness in not inspecting the arms cannot be attributed to it. He knew that no one knew the condition of the arm which broke better than he did, and no one in fact knew better than he its sufficiency to bear his weight. If he gave the matter a thought, he knew that he must rely upon his own judgment in placing his weight upon the arm; but before placing his weight thereon he ought to inspect it and see if it was sound and strong enough to hold him, and that he had no right to rely upon the judgment or inspection of any other person. Under such circumstances it is impossible to perceive how the death of the intestate can be charged to the defendant. (*Leary* v. *B. & A. R. R. Co.*, 139 Mass. 580; *Goodnow* v. *Walpole Emery Mills*, 146 id. 261.) If the intestate was not careless in placing his weight upon that arm, how can it be said that the defendant was careless in permitting him to do so?

"Without a more extended notice here of the evidence, giving the plaintiff the benefit of all the facts proved, and all the reasonable inferences from them, we think she failed to sustain the cause of action alleged by her.

"The judgment should, therefore, be reversed and a new trial granted, costs to abide event."

*Louis Marshall* for appellant.

*A. T. Benedict* for respondent.

EARL, Ch. J., reads for reversal and new trial.

FINCH, PECKHAM and MAYNARD, JJ., concur; ANDREWS, GRAY and O'BRIEN, JJ., dissent.

Judgment reversed.