## DIXON v. WESTERN UNION TEL. CO.

(Circuit Court, D. Indiana. June 18, 1895.)

### No. 9,207.

1. PLEADING—NEGLIGENCE—UNSAFE APPLIANCES.
    A complaint, in an action for personal injuries resulting from the insufficiency or unsafe condition of the appliances furnished by an employer to his servant, which does not allege that such insufficiency was known, or might have been known, to the employer, and was unknown to the servant, is fatally defective.

2. NEGLIGENCE—RISKS OF EMPLOYMENT.
    Plaintiff, who was in the employ of a telegraph company, engaged with others in stringing wires on its poles, was instructed to climb a pole belonging to another company, to get certain wires out of the way. Plaintiff climbed the pole by means of iron spikes driven into it, did his work, and, while descending, fell, in consequence of one of the spikes being insufficiently secured or loosened by the rotting of the wood. Held, that the danger from which the accident resulted was one of the risks of plaintiff's employment, which was assumed by him, and for which his employer was not liable.

3. SAME—LIABILITY OF EMPLOYER—INDIANA STATUTE.

The statute of Indiana (Act March 4, 1893) providing that "every * * * corporation, * * * shall be liable in damages for personal injury suffered by any employé while in its service, * * * where such injury resulted from the act or omission of any person done or made in obedience to any rule, regulation or by-law of such corporation, or in obedience to the particular instructions given by any person delegated with the authority of the corporation, * * *" does not impose liability upon the employer for injuries resulting from the act or omission of the person injured.

This was an action by Thomas W. Dixon against the Western Union Telegraph Company for personal injuries. The defendant demurred to the second paragraph of the complaint. Sustained.

Finch & Finch and Dunn & Love, for plaintiff.

Butler, Snow & Butler and Chambers, Pickens & Moores, for defendant.

BAKER, District Judge. The defendant has filed its demurrer to the second paragraph of the plaintiff's complaint, alleging that it does not state facts sufficient to constitute a cause of action. The paragraph shows the requisite diversity of citizenship to give the court jurisdiction, and then proceeds to allege, in substance, that the defendant owns divers lines and wires running on poles through the streets and highways of the city of Indianapolis, in the state of Indiana; that it employs a large number of men, whose duties, among others, are to string the wires on said poles, and to repair the same, and to set up and erect poles upon which to string said wires; that the plaintiff, who was a robust, strong, and healthy man, was employed by the defendant on or about November 1, 1894, to work for it in setting up and erecting poles, and stringing wires thereon; that he was placed, with a gang of men similarly employed, under one Edward Hyland, who was placed by the defendant over said gang of men, as boss or foreman, and who had power to employ and discharge hands, and to govern said gang in their work, and to represent and act for the defendant in all matters pertaining to the work of said gang of men; that the plaintiff was subject to the orders of said foreman, and was bound to obey, and did obey, his orders; that on December 2, 1894, the plaintiff, while in the discharge of his duties, was directed by said foreman, who was at the time acting for the defendant, and was delegated with authority by it in that behalf, to climb a certain telephone or telegraph pole near to which they were working, and to remove and raise a certain wire or wires which interfered with the setting up and erection of a certain pole upon which said gang was engaged; that, to enable a person to climb said pole, there were spikes driven into it, at intervals, on each side thereof, which projected out a sufficient distance to enable one to catch hold thereof, and to place the feet thereon, as a ladder; that the plaintiff, in obedience to the particular instructions of said foreman, did climb said pole, using the spikes in climbing; that said spikes had not been driven into said pole a sufficient distance, or the wood into which the spikes were driven was rotten and infirm, thereby rendering the use of said spikes in climbing unsafe and dangerous; that the unsafe and dangerous condition of the spikes was not

obvious to the plaintiff when he started to climb said pole, and he was not aware of the unsafe and dangerous condition thereof; that in descending said pole, using said spikes as steps and handholds, one of them, by reason of the insecure manner in which it was driven into said pole, or by reason of the rotten and infirm condition of the wood, pulled out from said pole, whereby the plaintiff was precipitated therefrom to the ground below, a distance of about 30 feet, sustaining severe and permanent injuries, which will cripple him for life; that in climbing and descending said pole the plaintiff exercised due care for his personal safety; and that his fall was wholly without any fault or negligence on his part.

The employer is not an insurer of the safety and sufficiency of the tools, machinery, or appliances furnished to the employé for his use, nor is he a guarantor of the safety of the place where or upon or about which the employé is required to work. The duty cast by law upon the employer is to use ordinary and reasonable care to furnish safe and sufficient tools, machinery, and working places. If he has done this, he has performed the full measure of his duty. The employé, in order to recover for defects in the appliances or working places of the business, must allege and prove that the appliance was defective, or the working place insecure; that the employer had notice or knowledge thereof, or that by the exercise of ordinary and reasonable care he might have had such notice or knowledge; and that the employé did not know of the defect, and had not equal means of knowing with the employer. Wood, Mast. & Serv. § 414. The result of the authorities in this state, which are too numerous to justify citation, is thus summarized in the recent case of Coal Co. v. Albani (Ind. App.) 40 N. E. 702:

"In suits by the servant against the master for his negligent failure to furnish a safe place or safe machinery or appliances for the servant's task, the law must now be regarded as settled in Indiana, by repeated adjudications, that knowledge is an independent element of liability, not included in the general averment of negligence. Where, therefore, as here, a recovery is sought for the master's neglect of his duty with reference to safe places or appliances, knowledge of the defect by the master, and want of knowledge by the servant, must be affirmatively shown by the complaint."

In the case of Railroad Co. v. Myers, 11 C. C. A. 439, 63 Fed. 793, the circuit court of appeals, citing many decisions of the supreme court of the United States, thus state the rule:

"The master's duty requires him to exercise ordinary and reasonable care, having regard to the hazards of the service, to furnish his servant with reasonably safe appliances, machinery, tools, and working places, and also to exercise ordinary and reasonable care at all times to keep them in a reasonably safe condition of repair. He is under no absolute obligation to furnish safe instrumentalities and working places, nor is his duty an absolute one to keep them in a safe condition of repair. He is not an insurer of their safety."

The paragraph in question does not allege that the defendant had notice or knowledge of the unsafe and dangerous condition of the pole, nor that it might have had such notice or knowledge by the exercise of ordinary care. Tested by the settled rule of law applicable to a case where the master furnishes appliances or working places for his servant, the paragraph is insufficient.

The pole in question, however, did not belong to the defendant. The use of it was casual, and incidental to the nature of the service in which the plaintiff was employed. In a large city, where telephone, telegraph, electric light, and electric railway poles and wires are numerous, in the erection of new poles and wires it is often necessary to climb poles already erected, in order to raise or remove wires which would interfere with the erection of additional poles and wires. It was a part of the plaintiff's duty to climb such poles, and to raise and remove obstructing wires. The work in which he was engaged could not otherwise have been accomplished, and the usual and ordinary risks of such service were assumed by the plaintiff. He had all the opportunity which any inspector could have had, to know whether the spikes had been driven into the pole securely, or whether the wood had become rotten and decayed. He learned, or might have learned, when he went up the pole, whether or not the spikes were securely fastened in the wood. He saw and used them in going up, and a careful inspection, to insure his personal safety, was the first thing which ought to have been suggested to him. He knew that the pole which he was about to climb did not belong to the defendant, and that it could not know the condition of the spikes, further than its foreman could ascertain it by an inspection of them standing on the ground. No fault or negligence of the foreman is charged in this particular. The plaintiff was acting within the scope of his employment, in going, as a pioneer, into a place of danger, which he knew his employer had not inspected, and could not inspect, except by causing him, or some other employé, to perform that duty. He was a man of mature age, and needed no instruction to warn him of his danger or his duty. He knew that no one knew the condition of the pole or the spikes better than he did, and that no one could know better than he the sufficiency of the spikes to bear his weight. If he gave the matter a thought, he knew that he must rely upon his own judgment, in placing his weight upon the spikes, and that before doing so he ought to test them, to see if they were sufficiently secure to trust his weight upon them. Under such circumstances he had no right to rely on the judgment or inspection of his foreman. Flood v. Telegraph Co., 131 N. Y. 603, 30 N. E. 196; Telephone Co. v. Loomis, 87 Tenn. 504, 11 S. W. 356; Garragan v. Iron-Works Co., 158 Mass. 596, 33 N. E. 652; Junior v. Power Co. (Mo. Sup.) 29 S. W. 988; Griffin v. Railway Co., 124 Ind. 326, 24 N. E. 888; Railroad Co. v. Gruff, 132 Ind. 13, 31 N. E. 460.

The paragraph in question must be held insufficient, unless, as claimed by counsel for the plaintiff, it states a cause of action within the terms of an act of the general assembly of this state approved March 4, 1893 (Acts 1893, p. 294, § 1). The first section of this act, so far as material, reads:

"That every railroad, or other corporation, except municipal, operating in this state, shall be liable in damages for personal injury suffered by any employé while in its service, the employé so injured being in the exercise of due care and diligence, in the following cases: * * * Third. Where such injury resulted from the act or omission of any person done or made in obedience to any rule, regulation or by-law of such corporation, or in obedience to the

particular instructions given by any person delegated with the authority of the corporation in that behalf."

Counsel for the plaintiff insist that this clause of the statute gives a right of action to an employé who has sustained an injury, without his fault, arising from the performance of any service rendered in obedience to the rules and regulations of the corporation, or in obedience to the particular instructions of any person delegated with the authority of the corporation in that behalf, without regard to the question of negligence or want of care of the corporation or its foreman. The contention is that the injury complained of resulted from the act of the plaintiff, done in obedience to the particular instructions given by the foreman, who had been delegated with authority in that behalf. According to the construction contended for, the clause would read:

"That every railroad or other corporation, except municipal, operating in this state, shall be liable in damages for personal injury suffered by any employé while in its service, the employé so injured being in the exercise of due care and diligence, in the following cases: * * * Third. Where such injury resulted from the act or omission of the person injured or any other person, done or made in obedience to any rule, regulation, or by-law, of such corporation, or in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf."

The phrase, "where such injury resulted from the act or omission of any person," is broad enough to embrace the injured person. The expression "any person," in its usual and ordinary sense, is inclusive, and embraces every employé. This clause of the statute is not free from ambiguity. While the language employed is capable of a construction as broad as is contended for, it will not be given such construction, if to do so would lead to absurd or unjust consequences. The natural import of the words of a statute, according to the common use of them when applied to the subject-matter, is to be regarded as expressing the intention of the legislature, unless it is repugnant to the acknowledged principles of justice and sound public policy, in which case the words ought to be enlarged or restrained so as to comport with those principles, unless the intention of the legislature is clearly and manifestly repugnant to them. Opinion of the Justices, 7 Mass. 523; Hittinger v. Westford, 135 Mass. 258. The construction contended for would make every corporation, except municipal, an insurer of the safety of its employés from injury in all cases where they were injured without their fault, while acting in obedience to the rules or instructions of their employer. It would subject the industries of the state to hazards and burdens of new and dangerous proportions. Its mischiefs would prove far-reaching, and its injustice would be great. No corporation could safely conduct its business, if it were required to become an absolute insurer of the safety of its employés. No principles of justice or sound policy can be invoked in support of a construction which would condemn the employer to compensate an employé for an injury for which the employer was in no wise in fault. The statute is susceptible of a construction which does no violence to the language employed, and which will protect the just rights of the employé, and at the same time hold the employer to respond in

damages for injuries resulting from its fault or negligence, or from the fault or negligence of any person delegated with authority to represent it. The true construction of the clause requires the words "any person" to be limited so as not to include the person injured. Thus construed, the clause would read:

"Where such injury resulted from the act or omission of any person (except the person injured) done or made: (1) in obedience to any rule, regulation, or by-law of such corporation; or (2) in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf."

This construction makes the statute harmonious, and gives effect to every word and member of it. Under this construction, the effect of this clause is to prevent the corporation from setting up the defense that the injury to the plaintiff was caused by the act or omission of a coemployé, when such coemployé was acting in obedience to the rules, regulations, or by-laws of the corporation, or in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf. In my opinion this clause of the statute ought to receive no broader construction. Thus construed, the paragraph is insufficient. The injury complained of did not result from the act or omission of a fellow servant, done or made in obedience to any rule, regulation, or by-law of the corporation, or in obedience to the particular instructions of the defendant's foreman, nor is it shown to have resulted from any fault or want of care of either. The demurrer is therefore sustained, to which ruling the plaintiff excepts.