Hodges *v.* Standard Wheel Co.

## HODGES *v.* STANDARD WHEEL COMPANY.

[No. 18,376. Filed Dec. 30, 1898. Rehearing denied July 7, 1899.]

MASTER AND SERVANT.—*Fellow Servant.*—*Damages.*—*Personal Injuries.*—Plaintiff was employed to assort and grade pieces of timber to be used as wheel rims, and to do other common labor about defendant's factory. H., who was employed to do similar work, and who had been authorized by the foreman of that department to direct the men as to the details of the work while he was temporarily absent in another part of the building, instructed plaintiff to remove some lumber from the room in which the rims were stored. H. assisted plaintiff in removing the lumber, and through his negligence alone the rims fell upon plaintiff and injured him. *Held*, that H. was acting solely as a fellow servant, and not as a representative of defendant, and as his negligence was the sole cause of the injury, plaintiff cannot recover. *pp. 680-688*.

SAME.—*Fellow Servant.*—*Employers' Liability Act.*—Plaintiff is not entitled to recover under subdivision 2 of section 1 of the Employers' Liability Act (Acts 1893, p. 294) for a personal injury sustained while in the employ of defendant, where the injury was caused wholly by one engaged with him in the work, but who was placed in charge of the men by the foreman while he was temporarily absent in another part of the building. *pp. 688-691*.

From the Hancock Circuit Court. *Affirmed.*

*W. J. Beckett, R. A. Black* and *D. W. Howe*, for appellant.

*W. H. H. Miller* and *J. B. Elam*, for appellee.

JORDAN, J.—Appellant commenced this action in the Marion Superior Court to recover damages, and on his motion the venue was changed to the Hancock Circuit Court, wherein a trial before a jury resulted in a general verdict awarding him $5,000, and with this verdict the jury returned answers to certain interrogatories. The court on motion of appellee rendered judgment in its favor upon the answers returned to the interrogatories, notwithstanding the general verdict. From this judgment appellant appeals, and the only question presented for our decision is, do the facts found by the jury in answer to the interrogatories entitle appellee to the judgment rendered in its favor by the lower court, notwithstanding the general verdict?

The action is for personal injuries sustained by appellant while in the employ of appellee, and the legal questions involved are those pertaining to master and servant.

The complaint is in two. paragraphs, and the following may be said to be, in substance, the facts therein set forth: Appellee is a corporation engaged in the city of Indianapolis in manufacturing buggy and light wagon wheels, and, among others, employed appellant to work in its factory in, the labor of assorting wheel rims, and in doing other work. It was his duty under his employment to take these rims, which consisted of strips of green hickory seven feet long and two inches square, and grade, and stack them on their ends in stalls prepared for that purpose against the side of the shed or building belonging to the factory. Over the department in which he worked, there was a foreman employed by appellee whom the latter had invested with the authority to direct the workmen therein, where each should work and what work each should perform, and this foreman had authority to employ, discharge, and keep the time of the employes under him. In one of said stalls there had been piled on their ends some heavy pieces of timber about four or five feet long, fourteen inches wide, and four inches thick. On December 24, 1895, it became necessary to move these

timbers in order to secure more room in which to pile the hickory rims, and appellant was directed by the foreman to remove these pieces of timber, and, in order to do so, it was necessary for him to go for a distance of six or eight feet between two columns of the wheel rims which had been piled in the shed as heretofore stated. These rims on the east side of the shed, or building, extended out beyond the arms or strips which had been placed there to support them, and aside from these arms there was nothing else to support the rims or prevent them from falling, which fact was known to said foreman, but not known to appellant. While the latter was engaged in removing the timbers in question, the foreman stood at the opening of the stall, and supported the projecting rims until appellant had removed all of the timber except one or two pieces, and it is then alleged that while the latter was bending over, with his back towards the pile of rims, the foreman negligently released and abandoned his said support, and, by reason thereof and without any fault or negligence on the part of the appellant, a large number of the rims fell on appellant's back and injured him, as alleged.

The second paragraph is substantially the same as the first, except there is an attempt made to base it on the second subdivision of section 1 of an act of the legislature regulating the liability of railroads and other corporations, approved March 4, 1893. Acts of 1893, p. 294. Neither of these paragraphs was demurred to in the lower court, and while we do not and need not pass upon their sufficiency to constitute a cause of action, that, at least, may be said to be questionable.

Both paragraphs of the complaint apparently proceed upon the theory that the accident in question was due to the alleged negligence of appellee's foreman in releasing his hold upon the wheel rims, by reason of which they fell upon appellant. The facts material to the question herein involved, as disclosed by the answers returned by the jury to the interrogatories, in substance, are as follows: Appellee is

a corporation engaged in the business of manufacturing parts of buggy and wagon wheels. Appellant had been in its employ as a common laborer doing various kinds of work, for about seven years prior to the accident. About eighteen months before he was injured he was transferred to the saw-room of appellee's factory, and there was engaged in assorting and grading strips for wheel rims, and this, in the main, was the only kind of work which he performed; but, under his employment, he was liable to be assigned to any common labor necessary to be done about the factory. The wheel rims were sawed from green hickory lumber, and were about one and one-half by one and three-eighths inches square, and from six to seven feet long, and these rims were ricked in stalls, being kept separate by projecting arms and pieces of timber dividing the space along the building into stalls which were about four or five feet wide. The pieces of lumber dividing the stalls were six feet above the ground and projected from the wall about four feet. The wheel rims were ordinarily removed from the stalls where the graders placed them within a few days. Some time before the accident several pieces of pine lumber, about five by six inches in size and six feet long were placed against the rims which had been previously piled, and during the day of the accident these pieces of pine lumber were covered over with other rims. One Bosler was the general manager of appellee's factory, and was usually present superintending the work. Under Bosler there were some eight foremen in charge of different parts of the work being done in the factory. A Mr. Saulsbury was one of these foremen, and he was in charge of the saw-room where appellant worked, and superintended the work in the saw-room and in the yard adjoining thereto. Saulsbury had authority to employ and discharge employes under him, and he was usually in the saw-room and about the premises in the yard near thereto several times during a day. Generally about seven men were employed in the saw-room,—two or three operated

the saws, and one was engaged in bringing material from the yards to the saws, and two or three were engaged in assorting and grading the rims after they were sawed. One of the seven men working along with appellant in the saw-room was named Huey, and he worked as a grader and assorter of the strips and rims and in addition to this work it was also his duty to file the saws, and he had been so engaged about two months prior to the accident. Huey, in like manner as his associates, received instructions in regard to his work from Saulsbury the foreman, and he had no authority either to employ or discharge any of the men working with him, and had no authority permanently to transfer employes from one kind of work to another. In the absence temporarily of the foreman from the saw-room, Huey, under instructions given him by the said foreman, was authorized to give directions in regard to bringing material from the saw-room, and to direct the men employed with him in the room in respect to the details of the work being done during the time that Saulsbury, the foreman, was temporarily absent in other parts of the premises, and the foreman had directed the men to receive instructions from Huey in his absence; but no one having any connection with appellee, except Saulsbury; had given Huey any authority. At the time appellant was transferred to work in the saw-room, Saulsbury informed him that he would be under the supervision of Huey and that he should obey the instructions of the latter in matters pertaining to his work in the saw-room. On the morning of the accident, Huey told appellant that it would be necessary to remove the pieces of pine lumber in question from where they had been previously placed, as one of the carpenters required their use, and he then directed appellant, who at the time was engaged in assorting strips in the saw-room, to go to the north side of said room and remove the pieces of pine lumber, and in giving this direction, or order, Huey was acting under the authority given him, as before stated, by Saulsbury the fore-

man, but the latter was not present when this direction was given by Huey to appellant.   The work of moving this pine lumber was not a proper part of the work of the graders or sorters, and Huey ought to have called upon Saulsbury, the foreman, to send other men to do such work.   Appellant at first refused to do this work, but Huey threatened to report him to the office unless he did.   Huey and appellant then went to work together to remove the pine pieces.   Huey partly uncovered these pieces by removing a part of the rims which were on top of them, but did not remove all of them before appellant went into the stall.   When appellant went into the stall to remove the pine lumber, Huey told him that he would stand at the mouth of the stall and hold the slats or rims so as to prevent them from falling, and appellant relied upon what Huey said in this respect.   Huey stood at the mouth of the stalls, holding the slats or rims, when appellant entered the stall, and continued to stand there until the latter had removed and deposited in the yard five or more of the pine pieces, and had returned to the stall.   After appellant's return to the stall, he took hold of a piece of pine lumber and was trying to move it, and, while so doing, Huey, without notifying appellant of his intentions, released his hold upon the rims and went out of the building into the yard, leaving the rims unsupported, by reason of which they fell upon appellant while he was in the act of removing the pieces of pine lumber, and caused the severe injury of which he complains.

Appellant at the time of the accident, as the jury find, was acting as a reasonably prudent man, but Huey was not so acting.   No officer, agent, or employe of the appellee, and no one, except Huey, had anything to do with the accident to appellant; and the jury further find that the place where appellant was at work when the accident occurred was not a dangerous one in which to do work if Huey had continued to hold the rims or slats as he was doing.

Under the averments of the complaint, the foreman or

agent of appellee therein mentioned, to whom the negligence causing the accident to appellant was imputed, is alleged to have been invested with the powers or duties of a vice princi-pal in the department over which he exercised superintend-ence.    He had, it is alleged in the complaint, authority to employ and discharge the men who were under him as em-ployes of appellee.    The facts disclosed by the answers to the interrogatories present a case materially different from the one set forth in the complaint.    Huey, to whom the negli-gence, under the facts disclosed by the interrogatories, is imputed, is expressly shown by the facts not to have had any such power which authorized him to employ or discharge any of appellee's employes.    If it can be said that he occupied a position higher than that of a fellow servant, it was because the foreman, Saulsbury, would leave him in charge of the work in which he and his associates were engaged when he, the foreman, was temporarily absent in other parts of the premises.

Reduced to a simple question, the facts show that Huey was the sole cause of the accident by which appellant was in-jured.    Or, in other words, the negligence of appellee, if any, consisted alone in the act of Huey releasing his hold up-on the rims, under the circumstances, as he did, at the time appellant was engaged in removing the pieces of pine lumber. Neither the facts alleged in the complaint nor those revealed by the special findings of the jury go to show that the place where appellant was at work, at the time he sustained his injury, was unsafe or dangerous, and the jury expressly find that it was not, except as it may have been rendered danger-ous from the fact alone that Huey withdrew the support he was giving to the rick of rims by means of holding his hands against the same.    That appellee did not owe to ap-pellant, as its employe, under the circumstances, the legal duty to support the rims in question by the hands of some one of its agents or representatives in the manner as Huey was doing just previous to the accident, is certainly evident.    If

it could be said to be charged with that duty, then every corporation engaged in the same line of business as it was, would in legal contemplation, be required to be present at all times and places at its factory when lumber, timber, or iron, or other heavy material of like character was being handled or moved by some of its employes, and by the hands of such agent or representatives prevent such iron, timber, or lumber, or other material connected therewith from slipping and falling upon said employes and thereby injuring them. Huey, in lending the support which he did to the pile of rims in question at the time he and appellant were engaged in removing the pine lumber, in no sense can be said to have been a representative of the appellee entrusted with the duty of seeing that the place where appellant was working at the time of the accident was safe. He and appellant were associated together as employes engaged in the same common service,—that of assorting and grading the strips or rims after they were sawed, and he was nothing more or less than one of appellant's fellow servants. Certainly, in the assistance which he lent to appellant while the latter was removing the pine lumber by supporting the pile of wheel rims with which the lumber was connected, he was acting solely as fellow servant, and not as a representative of appellant's master. If it could be said, upon any view of the case, under the circumstances, that he was of a higher rank than appellant, still it must be true that his act, to which appellant attributes his injuries, was that of a fellow servant. For it is true that even an agent or representative of a high rank may at the time an act is done be a fellow servant of an employe who occupies a subordinate position. *Indiana Car Co.* v. *Parker,* 100 Ind. 181; *Taylor* v. *Evansville, etc., R. Co.,* 121 Ind. 124, 6 L. R. A. 584.

The facts returned by the jury clearly show that the act or omission of Huey, resulting in the injury to appellant, did not involve a duty which the master owes to his servant. The negligence, if any, is shown to have been that solely of

a fellow servant, and the rule of the common law must control, and precludes a recovery. Appellant, therefore, was not entitled to be awarded a judgment upon the general verdict. The following decisions fully support this conclusion: *Drinkout* v. *Eagle Machine Works*, 90 Ind. 423; *Indiana Car Co.* v. *Parker, supra; New Pittsburgh, etc., Co.* v. *Peterson*, 136 Ind. 398; *Justice* v. *Pennsylvania Co.*, 130 Ind. 321; *Robertson* v. *Chicago, etc., R. Co.*, 146 Ind. 486, and cases there cited; *Peirce, Rec.* v. *Oliver*, 18 Ind. App. 87; *Salem, etc., Co.* v. *Chastain*, 9 Ind. App. 453.

The facts revealed by the answers to the interrogatories, when stripped of conclusions and assumptions, as they must be, clearly show also that appellant is not entitled to recover under subdivsion 2 of section 1 of the Employers' Liability Act of 1893, section 7083 Burns 1894, section 5206s Horner 1897. That part of section 1 of the act necessary to the consideration of the question, as here involved, provides that, "Every railroad or other corporation, except municipal, operating in this State, shall be liable in damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Second. Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform, and did conform."

Counsel for appellant assail the validity of this act so far as it relates to corporations other than railroads, but under its provisions, as the facts disclose, appellant is not entitled to a recovery, and its constitutional validity may therefore be dismissed without consideration. The facts certainly show that Huey, in the position which he occupied in the service of appellee, was not a person, contemplated by the statute, to whose orders appellant was bound to conform or yield obedience. He was but a fellow servant engaged in the same common labor with appellant, and in no manner was he the

representative of the appellee in giving the order or directions to appellant which he did. It is shown that he had no more authority to speak or give directions for his master than had appellant. The mere fact that Saulsbury, his foreman, may have temporarily left him in charge of the work in the saw-room did not invest him with the powers of such foreman, nor put him in a position at the time to be the representative of appellee so as to require his associates engaged with him in the same labor to conform to his orders. If Saulsbury the foreman could in this manner without any authority expressed or implied, from appellee, delegate the powers which he possessed to Huey, then the former might select any person in his place or stead to represent his master, or principal, and thereby render the latter liable for the acts or orders of such person. This, it is evident, under the circumstances, he could not legally do. It is a general rule of the law that the agent or representative of another, in the absence of authority expressed or implied from the latter, cannot delegate his powers or confer them upon another. Where the duties which he has been selected to discharge require the exercise of skill, judgment, or discretion, the reasons why he may not delegate his power or authority are obvious. The trust and confidence reposed in him by his principal is personal to him, and, without authority, he is not permitted to transfer it to another, whose ability, judgment, or discretion might not be known to the principal, or, if known, the latter might not select him as his representative or agent. Story on Agency, (9th ed.) section 13; Mechem on Agency, sections 185, 186. In fact, the jury find that Huey ought to have called upon Saulsbury, the foreman, to send other men to do the work which appellant was directed to do and in which he was engaged at the time of the accident.

The statute in question certainly intends that where the injury results from the negligence of a person in the service of a corporation, that such person must be one who is by it

at least expressly or impliedly authorized to give the order or direction, and thereby require the employe to obey. If he is not, then, in a legal sense, the employe is not bound to conform to his order. Huey, as we have seen, is shown by the facts not to have been invested with this power or authority by appellee, and consequently was not the person whom the statute contemplated as the one to whose orders appellant was bound to conform. This interpretation finds support in the general scope of the statute, and as the act is in derogation of the common law, it must be strictly construed. But, conceding that Huey was such a person at the time he directed appellant to remove the pine lumber, the negligence in question is shown not to have resulted in any manner from the order which was given to appellant, but resulted wholly by reason of the negligence of Huey in his failure to continue to support the rims by means of his hands. This negligence of Huey's, occurring subsequent to the giving of the order, when he may be said to have been engaged in assisting appellant to remove the pine pieces, is not a negligence for which appellee is liable within the meaning and intent of the second subdivision of section 1. The following cases, some of them directly and others by analogy, support the construction which we give to the statute : *Baltimore, etc., R. Co.* v. *Little,* 149 Ind. 167; *Dixon* v. *Western Union Tel. Co.,* 68 Fed. 630; *City Council* v. *Harris,* 101 Ala. 564, 14 South. 357, 22 L. R. A. 361; *Dantzler* v. *De Bardeleben, etc., Co.,* 101 Ala. 309, 14 South. 10; *Lundberg* v. *Shevlin-Carpenter Co.,* 68 Minn. 135, 70, N. W. 1078; *O'Connor* v. *Neal,* 153 Mass. 281, 26 N. E. 857; *Howard* v. *Bennett,* 58 L. J. Q. B. 129; *Wright* v. *Wallis,* 3 Times Law. Rep. 779; *Kellard* v. *Rooke,* 57 L. J. Q. B. 599; *Gibbs* v. *Great Western R. Co.,* 53 L. J. B. P. & E. 543; *Burns* v. *Washburn,* 160 Mass. 457, 36 N. E. 199. To place the construction upon the statute which counsel for appellant contend, and thereby hold appellee liable, under the circumstances, for the negligence of Huey, would result in

subjecting to liability every corporation in the State for the injury sustained by one of its employes through the negligence of a fellow servant, having no greater power or authority than had the injured employe. Upon any view of the case, the facts found by the jury in their answer to the interrogatories, are wholly incompatible with the right of appellant to a judgment on the general verdict, and by a well settled rule, under the circumstances, the latter must yield to the facts as specially found by the jury, and the trial court did not err in rendering judgment on appellee's motion in its favor. Judgment affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—We held at the former hearing of this cause that, under the facts disclosed by the special findings of the jury in their answer to interrogatories, it was shown that appellant was neither entitled to recover at common law, nor under subdivision 2 of section 1 of the Employers' Liability Act of 1893. It was held that he could not recover under the provisions of the latter statute, because the facts disclosed that Huey had not been placed in authority over him by appellee, and therefore was not a person within the meaning of the law to whose order appellant, as an employe of the former, was bound to conform.

It is now insisted, under the petition for a rehearing, that by this latter holding the court erred. We have again carefully reviewed the facts as found by the jury, and the authorities cited pro and con by the parties to this appeal, and are constrained to abide by the conclusion reached in the original opinion. Appellant certainly could not maintain this action, under the provisions of the act in question, by simply showing that at the time he sustained the injury he was engaged in removing the lumber in obedience to the directions of Huey, to whose negligence he attributes his injuries; but he would at least be required to go further, and show that such negligent party was a person in the service

of appellee to whose order or direction, under the particular circumstances of the case, he, as an employe of appellee, was "bound to conform, and did conform." *"Ita lex scripta est."* The law is so written and means what it expressly declares.

It is clear that the case, as presented by the facts found by the jury, is not one of common law liability, and it is equally clear, we think, that the facts conclusively show that it does not come within the provisions of the Employers' Liability Act. As to whether the negligence imputed to Huey, under the particular circumstances in the case, in the event it further appeared that he was either expressly or impliedly invested by appellee with authority over appellant, so as to give orders and directions, to which orders and directions he was bound to conform, would render appellee liable, we need not and do not decide.

We are referred by appellant's learned counsel to the case of *Wild* v. *Waygood*, 1 L. R. (1892) Q. B. 783; but the facts in that case are in no wise similar to the facts in this. There it appeared that one Duplea and the plaintiff were engaged in the service of the defendant in constructing a hydraulic lift. Duplea directed the plaintiff to place a plank across the well of the lift and stand on the plank. With this order the plaintiff complied, and, while standing on the plank, Duplea negligently started the lift, which negligent act resulted in injury to the plaintiff. It further appeared in that case that Duplea had been placed by defendant in authority over the plaintiff, and that the latter was bound to and did conform to his orders at the time of the injury. The liability of the defendant in that case, under the provisions of the English statute, which are similar to those of subdivision 2 of section 1, *supra*, was sustained. It was held in the Wild case that, in order to establish a liability against the master under the statute, the injured servant, among other things, must show that the injury complained of was the result of the negligence of a person in the employ of the common master to

whose orders the servant, at the time he sustained the injury, was bound to conform and did conform, and that the injury must be the result of the negligence of the person giving the order and of the injured servant conforming thereto.

The unfavorable feature which confronts appellant, under the facts in this case, is that when they are considered and applied in reference to the plain wording and meaning of the statute, they destroy the very foundation upon which he seeks to construct his cause of action, and necessarily defeat a recovery. They clearly show that Huey had not been placed, either expressly or impliedly, by appellee in a position of authority over appellant at the time of the accident, and hence he was not a person, in any sense within the contemplation of the statute, to whose orders the latter was required to yield obedience. It is true that the jury, in answer to an interrogatory, find that appellant was bound to conform to the orders of Huey. This, however, was but a mere conclusion upon the part of the jury, and can not be accepted as a finding of a fact. As a general rule, a party seeking to enforce a right or remedy provided by statute, in order to prevail, must bring himself, substantially at least, within its provisions. *Harrison* v. *Stanton*, 146 Ind. 366, and authorities there cited.

The petition for rehearing is overruled.