Alexander McDonald *vs.* Postal Telegraph Co.[1]

PROVIDENCE—MAY 28, 1900.

Present: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Master and Servant.   Contributory Negligence.*

Plaintiff, a lineman, went up a pole to put wires on a cross-arm.   He put his leg over the cross-arm to tie the wire on the end pin, leaned out to tie the wire, when the cross-arm broke, as the jury found, by reason of a defect therein caused by a knot.   The arm had been up for about two years   The cross-arm had been painted, obscuring the knot to some extent, and it was partially covered at the top by the insulator, so that a climber on a casual inspection would not be likely to see it.   There was evidence that it was necessary for plaintiff to put his leg over the arm to reach the wire :—

*Held*, that the plaintiff had the right to assume that the arm had been prop-. erly inspected ; that the time it had been erected was not sufficient to lead him to look for decay, and that upon the facts stated it was competent for the jury to find there was no contributory negligence.

(2) *Express Assumption by Master of Duty to Furnish Proper Appliances.*

A master who furnishes appliances is bound to see that they are reasonably safe for his servants to use, and cannot devolve this duty upon others; and especially where he has assumed the duty of inspecting the appliances before furnishing them to his servants ; the latter have the right to assume that they are suitable for use, there being nothing to show the contrary or to warn them that they must make their own inspection.

(3) *Verdict.   Excessive Damages.*

Where the question of damages is a question of fact and two juries have returned verdicts for the same amount, the court will not disturb the verdict on the ground that it is excessive.

Trespass on the Case for negligence.   The facts are sufficiently stated in the opinion.   Heard on petition of defendant for new trial, and new trial denied.

Stiness, J.   The plaintiff, in the employ of the defendant as a lineman, fell from a pole on which he was at work, by reason of the breaking of a cross-arm.   His action is based upon the negligence of the defendant in providing a defective

---

[1] See *Dwyer* v. *Shaw*, decided June 30, 1893, and to be reported at end of Volume 22.

arm through which a knot ran from one side to the other, obvious to proper inspection, which so weakened the arm as to make it unfit for use. The defendant's petition for a new trial is based upon the grounds of verdict against the evidence, erroneous rulings, and excessive damages.

The claim that the verdict is against the evidence covers both the negligence of the defendant and contributory negligence of the plaintiff.

We cannot set aside the verdict upon either of these grounds. It is admitted that there was a knot in the arm, but there was a controversy as to its extent, the defendant claiming that the break was not caused by the knot, but by a weather-crack which could not be seen until after the break. Upon this question the jury was warranted in finding from the evidence that the knot extended through the arm all the way on one side and part of the way on the other. According to the testimony of experts, including those of the defendant, if such a defect existed it would be a bad arm and it would be the duty of the inspector to reject it. It also appeared in testimony that the arms had been painted before delivery to the defendant, but that such a knot would be discoverable on inspection, notwithstanding the paint. These were pure questions of fact, and as the verdict was not clearly wrong we cannot disturb it.

(1)     As to the contributory negligence of the plaintiff, the claim of the defendant is that, if the defect was obvious, the plaintiff should have seen it and was negligent in trusting himself to an arm obviously defective. This claim is in accordance with the general rule. *Disano* v. *New England Co.*, 20 R. I. 452 ; *Larich* v. *Moies*, 18 R. I. 513 ; *Kelley* v. *Silver Spring Co.*, 12 R. I. 112. But such a rule is not controlling in this case. A defect which may be discovered by an inspector, whose duty it is to look for it, may easily and without negligence escape the notice of one who is engaged in some other duty. The application of the rule depends upon the circumstances of the case. *Jones* v. *N. Y., N. H. & H. R. R.*, 20 R. I. 210 ; *Burns* v. *Same*, 20 R. I. 789 ; *Whipple* v. *Same*,

19 R. I. 587 ; *Crandall* v. *Same,* 19 R. I. 594.    In this case
the plaintiff had the right to assume that the arm had been
properly inspected.    It had been up only about two years—
not long enough to lead him to look for decay.    The paint-
ing had obscured the knot to some extent, at least, and it
was partially covered on the top by the insulator, so that a
climber would not be likely to see it upon a casual inspection.
It is also claimed that the plaintiff was negligent in throw-
ing his leg over the arm between the first and second pins ;
but there was testimony to show that this was necessary in
order to reach the wire to be tied.    Under such testimony it
was competent for the jury to find that there was no contrib-
utory negligence.    Much stress was laid by the defendant
upon the fact that the weather-crack was not discernible,
and that the break was through this crack.    We should be
quite ready to hold that a defendant would not be liable for
such a defect, but it appears that the break was through the
knot-hole also.    The jury must have based their verdict upon
this fact, because no reference to the weather-crack is made
in the special findings, and the jury found that the arm was
not a proper one when it was put up, which was before the
weather-crack had developed.

We do not separately consider the refusals to nonsuit and
to direct a verdict, because they are involved in the suffi-
ciency of the evidence and the correctness of rulings other-
wise raised.

(2)    The principal objection to the rulings is that the court in-
structed the jury that the master is to furnish a reasonably
safe cross-arm, which, the defendant says, is equivalent to
saying that a master *insures* the safety of the appliance.

This court has already stated, and the trial judge also said,
that a master is not an insurer against accidents, and that
his duty is to furnish a reasonably safe place for work and
reasonably safe appliances.    *McCann* v. *Atlantic Mills,* 20
R. I. 566 ; *Healey* v. *N. Y., N. H. & H. R. R.,* 20 R. I. 136.
The defendant insisted that the ruling should be that the
defendant must use *reasonable care* to furnish safe appli-

ances. This is, in fact, what the trial judge ruled. The difference is one of words rather than substance. The statement to the jury was that neglect to perform a legal duty is "The failure to do what a reasonable and prudent person would ordinarily have done under the same circumstances."

Again: "The defendant corporation was bound to see to it, as a reasonable and prudent person would be bound to see to it, . . . if you find that the cross-arm in question was defective, that its defect was of such a nature that a reasonable and prudent person could have discovered the defect and could have rejected it."

Again: "If you find there was a defect in the cross-arm, and if you find that it was easy to be seen by an observer, then it was the duty of the plaintiff, in the exercise of ordinary care, to have made the necessary inspection."

The rule which the defendant maintains could hardly have been stated more explicitly.

Reasonable care to provide safe things is involved in the qualification that they shall be "reasonably safe;" but the judge did not leave it in that way, for he went on to explain that reasonable care in this case meant proper inspection. We have considered this question as it was argued and presented in defendant's brief, but the requests to charge which were excepted to were somewhat different. The first was, in substance, that if the company furnished a sufficient number of arms from which workmen could select it was not liable. Second. That if it was a visible defect the workman who selected the arm was negligent, for which the company was not responsible. Third. If the company employed competent workmen to inspect the arms it was not liable.

All of these requests were rightly refused, in accordance with decisions of this court as well as with prevailing law. In *Mulvey* v. *R. I. Locomotive Works*, 14 R. I. 204, Durfee, C. J., said: "It is the duty of a master who furnishes machinery for his servants to operate or work about, to see that it is reasonably safe. He cannot divest himself of this duty by devolving it on others, and if he does devolve it on others

they will simply occupy his place and he will remain as responsible for their negligence as if he were personally guilty of it himself." The same rule is stated in *Brodeur* v. *Valley Falls Co.*, 16 R. I. 448; *Hanna* v. *Granger*, 18 R. I. 507; *Laporte* v. *Cook*, 21 R. I. 158.

In this case the defendant's testimony shows that the company had assumed the duty of inspection before furnishing the cross-arms, and the plaintiff had the right to assume that they were suitable for use, there being nothing to show the contrary or to warn him that he must make his own inspection. The cases relied on by the defendant are of the latter kind and essentially different from the case at bar.

In *Flood* v. *Western Union*, 131 N. Y. 603, the plaintiff, a lineman, fell by the breaking of a cross-arm which had been in use six years. The opinion of the court shows that there was no negligence in furnishing and putting up the arm originally, or any defect therein discernible by an ordinary inspector. In *McIsaac* v. *Northampton Co.*, 172 Mass. 89, a lineman was sent to change wires from an old pole belonging to another company, which proved to be rotten below the surface of the ground. The pole had been in use eight or nine years, and showed no sign of weakness above ground. In *Cumberland* v. *Loomis*, 87 Tenn. 504, a charge that the plaintiff could assume that a pole which he had to climb was safe was held to be erroneous because it decided that he was not an inspector, which was a disputed question of fact. In *Greene* v. *Western Union*, 72 Fed. Rep. 250, the plaintiff was one of a crew that had put up a gin-pole, which fell because it had not been properly guyed. It was a part of his own work. In *Dixon* v. *Western Union*, 68 Fed. Rep. 630, the plaintiff fell from a rotten pole belonging to another company. In these cases the companies were not held liable, because there had been no negligence on their part and the injury came from the ordinary risks of the employment. In present case, as we have seen, there was an original negligence of inspection.

The exceptions as to the admission of testimony are unim-

portant, in view of the findings of fact by the jury, and could not affect the question of ultimate liability. It is therefore needless to consider them in detail.

(3)    As to the question of damages there was much testimony, from which it was argued on one side that injury was great and permanent, and on the other that it was small and brief. Considering only the fact that the plaintiff worked for the defendant for eight months after the accident, and then left only because his pay was cut down, it would seem that the injury could not have been serious. But the testimony, by physicians, of nervous shock, was doubtless believed by the jury. It was a question of fact, and, as two juries have fixed the same sum, we cannot say that it is excessive.

Petition for new trial denied, and case remitted.

*David S. Baker and Lewis A. Waterman*, for plaintiff.
*Tillinghast & Tillinghast*, for defendant.