## JUSTUS W. SHEPARD'S HEIRS *v.* JUSTUS W. SHEPARD'S ESTATE.

### *Will, Construction of.*

1. The will contained the following clause: " I give and devise the residue of my estate, both real and personal, in equal shares to my four sisters, Catherine and Calista Shepard and Betsey Martin and Flavilla Batchelder, to them and their children forever, with this condition, that if either of my said sisters should die, leaving no children, then her share as aforesaid to the other sisters living, in equal shares." The will was made in 1850, and the testator died in 1867. One sister died in 1864, leaving a daughter, who has since deceased, leaving three children; another sister died in 1878, leaving no children; another in 1882, leaving children; and the last in 1883, leaving no children; *Held,* that the sisters took only a life estate with remainder to their surviving children; and that the shares of the two sisters, who died without children, should be divided equally, *per stirpes,* between the grandchildren of one sister and the children of the other sister.

2. There is no latent ambiguity in the will, which would permit the admission of testimony to show enmity between the testator and his brother.

3. In construing a will, effect should be given to every clause, and proper force to every word.

APPEAL from the Probate Court. Heard by the court, March Term, 1886, Washington County, POWERS, J., presiding. The contention was as to the construction of a certain clause in the will of Justus W. Shepard, which clause is stated in the opinion of the court. The court decided that the meaning of said will was clear and not ambiguous, and that upon the death of the said J. W. Shepard, the said Betsey Martin, Catherine Shepard and Calista Shepard each were entitled to one-fourth part of said estate in fee, and that Elizabeth Powell, the child of Flavilla Batchelder, deceased, was entitled to the other fourth part of said estate in fee.

Appeal by both parties.

The testator left no widow, never having been married. On the part of the children of Betsey Martin, evidence was offered to prove, that very great enmity existed, when the will was made and afterwards, between the testator and his brother, Prentiss M. Shepard; that the testator informed his other relatives and friends that none of his property should ever go to his brother; and also to prove that at the time of the making of said will the said Catherine and Calista Shepard had no children, and they each had arrived at such an age that there was then no probability that either of them would ever have any children. The court excluded this evidence.

Evidence was also offered to show that after the decease of J. W. Shepard the will was duly probated and established, and one-fourth of said estate was decreed to Elizabeth Powell, the sole daughter and representative of Flavilla Batchelder, and was paid over to her at that time. That the Probate Court at the same time decreed that the shares of Catherine and Calista Shepard and Betsey Martin were subject to the condition in said will, and that it was necessary to appoint a trustee to hold property under the will and the court then and there appointed Willard S. Martin said trustee, who has ever since managed the fund and paid the interest over to each of the legatees annually, and after the decease of Catherine Shepard the interest on one-half of Catherine's share of the fund was paid over to Betsey Martin and the other half to Calista Shepard annually by the trustee and his account settled in the Probate Court annually; from all which no appeal was ever taken.

That at the time of the settlement of said estate there was placed in the hands of Willard S. Martin, trustee, the sum of $12,635.58, and that the interest on said fund, or income thereof, has been paid over as aforesaid.

The Probate Court decided that on the decease of Catherine Shepard, that her share descended in fee in equal shares to Betsey Martin and Calista Shepard, and that on the decease of

Calista Shepard, that portion which she so received from the share of Catherine Shepard descended and became a part of her estate to be distributed according to law.

That the portion or share of Calista Shepard originally under the will, she having deceased leaving no children, be divided equally among the children of Betsey Martin and Flavilla Batchelder, and that the representatives of any deceased child should receive such deceased child's share.

The County Court decided that the evidence offered was immaterial, irrelevant and excluded the same.

*J. A. Wing*, for P. M. Shepard and grandchildren of Mrs. Batchelder.

1. Said Calista, having survived the testator, took an estate in fee. The words, "dying without children," by all rules of law, refer to dying in the life of the testator and cannot have reference to any other time.

That the testator intended his property should be divided between the sisters and their children living at his death, is already shown by the words of the will. He gives the fund to his sisters; makes no provision for a trustee to manage the fund and pay them the interest but gives it directly to them and their children.

It would be absurd to say the testator did not mean by his will, to benefit his sisters while they lived. If he had intended what the other side now claims, he would have had a trustee appointed to manage the fund and pay the interest annually to his sisters.

2. Parol evidence was not admissible. The ruling of the court below was correct. 1 Jar. Wills, p. 409 (top p. 708;) *Wells* v. *Wells*, 37 Vt. 483; *Button* v. *Tract Society*, 23 Vt. 337; *Mann* v. *Mann*, 1 Johns. Ch. 231; Cheeney's Case, 5 Co. 68; *Lord Walpole* v. *Lord Chalmandelly*, 7 Term, 138; *Hawnan* v. *Thomas*, 44 Md. 30; *Brown* v. *Pembroke*, 6 Cen. Rep. 603; 6 Wait Act. & Def. 386.

3. The estate of Betsey Martin was different from the estate of Calista Shepard. By the will one-fourth of the testator's estate was given to Betsey Martin and her children forever. This gave Betsey Martin either a life estate with the reversion to her children, or it gave to the mother one-sixth and to each of her five children one-sixth of said one-fourth in fee on the death of the testator, as tenants in common. The children being referred to in said will took some interest under it. *Lord Bindon* v. *The Earl of Suffolk*, 1 Will. P. 96 (1707) ; *Bufford* v. *Bradford*, 2 Atk. 220 ; *Cannon* v. *Apperson*, 13 Lea, (Term) 550. The only object in referring to this question was to show that the will was not to the sisters as a class.

4. The law sustains the common sense view of the case. " When the bequest is simply to A, and in case of his death, or if he die, to B, A surviving the testator takes absolutely." 3 Jar. Wills, (ed. 1881) ; 2 Id. 602, 752 ; *Lawfield* v. *Stone-ham*, 2 Str. 1261 ; *Webster* v. *Hale*, 8 Ves. 410 ; *Ommany* v. *Bevan*, 18 Ves. 292 ; *Wright* v. *Stevens*, 4 Barn. Ald. 574 ; *King* v. *Taylor*, 5 Ves. 806 ; *Howard* v. *Howard*, 21 Beav. 550 ; *Slade* v. *Milner*, 4 Mod. 144. In *Hinckley* v. *Simmons*, 4 Ves. where a bequest of all the testator's fortune was to A, and in case of his death to B, it was held to confer an absolute interest on A surviving the testator. *Clayton* v. *Low*, 5 Barn. & Ald. is on all fours with the case at bar, substituting grandchildren for children. See to the same point, *Woodburn* v. *Woodburn*, 23 L. J. Ch. 339 ; *In re Austin*, 3 Beav. 135 ; *Fahency* v. *Holsinger*, 65 Penn. St. 388 ; *Johnson* v. *Antro-bus*, 21 Beav. 556.

A bequest to A with limitation over in case A should die without leaving issue, vests the sum given absolutely in A if he is alive when the distribution was made and the gift over in such a case will only take effect of A's death before the testator. *Davis* v. *Davis*, 3 N. J. Eq. 163 ; see *Burrell* v. *Burrell*, 38 N. J. Eq. 60 ; *Jamson* v. *Cravour*, 4 Del. 311 ; *Whithead* v.

*Stoddard*, 58 Vt. 623 ; *Mitchell* v. *Morse*, 1 East. Rep. 603 ; 3 Jar. Wills, p. 2, vol. 770 ; 2 Meyl & R. 69 ; 2 R. & M. 197, 210 ; *Newton* v. *Reed*, Sim. 141 ; *Cambridge* v. *Rouse*, 4 Ves. 12. Courts favor vested estates. 1 Jar. Wills, 351 ; *Southward* v. *Convers*, 143 Mass. 189 ; Cockin's Appeal, 1 Cen. Rep. (Penn.) 890 ; *Quackenbos* v. *Kingsland*, 2 Cen. Rep. 918 ; *Green* v. *Wilbur*, 1 New Eng. Rep. 815 ; *Hindman's Appeal*, 21 Reporter, 569 ; *Richardson's Appeal*, 8 East. Rep. (Penn.) 722 ; *Shaw* v. *Ford*, 13 Eng. Rep. Ch. Div. 796 ; *Merrill* v. *Emery*, 10 Pick. 507.

" The ordinary presumption is that all devisees and bequests vest upon the death of the testator ; and there is nothing in the provision of this will to control that presumption." Gray, Ch. J., in *Pike* v. *Stephenson*, 99 Mass. 188. See *Clafflin* v. *Tilton*, 141 Mass. 243.

5. But if we are wrong in claiming that the words " dying without children," referred to dying in the life of the testator, it created an estate tail, and the fund being personal property vested absolutely in the first taker and the limitation over was void. 2 Preston Est. 85, 261, 355 ; *Crocks* v. *De Vandes*, 9 Ves. 195 ; PECK, J., in *Brattleboro* v. *Mead*, 42 Vt. 556 ; *Attorney-General* v. *Hird*, 1 Bro. Ch. 171 ; *Hall* v. *Priest*, 72 Mass. 18 ; *Bigge* v. *Bentley*, 1 Bro. Ch. 187 ; 3 East 84 ; 2 R. & M. 55, 378 ; *Daintry* v. *Daintry*, 7 Term, 307 ; *Williamson* v. *Daniel*, 12 Wheat. 568 ; 7 Curtis, 392.

6. The property either vested in Calista on the death of the testator, or on the death of Calista it lapsed and became a part of the testator's estate, as there was no sister living to take on the death of Calista.

7. If the fund is to go to the children of the sisters they take *per stirpes*. *Church* v. *Church*, 1 New Eng. Rep. 485 ; *Gaines* v. *Strong*, 40 Vt. 354 ; *Heath* v. *Bancroft*, 15 Reporter (Conn.) 461 ; *Perry* v. *White*, 2 Conn. 777 ; *Van Herrick* v. *Dutch Church*, 20 Wend. 457 ; *Bove* v. *Mix*, 17

Shepard's Heirs v. Shepard's Estate.

Wend. 119; *Putnam* v. *Gleason*, 99 Mass. 454; *Willis* v. *Douglas*, 10 Beav. 47; *Arrow* v. *Mellish*, De G. J. & S. 355; *Stoughtenburg* v. *Moore*, 37 N. J. Eq. 63; *Vreeland* v. *Van Ryper*, 11 N. J. Eq. 133; *Woolson* v. *Beck*, 34 N. J. Eq. 74; *Patrick* v. *Royce*, 13 Q. B. 100; 2 Jar. Wills, 19; *Thomas* v. *Thomas*, 6 Term, 671. The case of *Stowell* v. *Hastings*, 59 Vt. 494, seems to be nearly like the one at bar. So the case of *Coe* v. *James*, 4 New Eng. Rep. 591, is a strong case for the plaintiffs. The plaintiffs cited in answer to the defendant's brief, the following: *Hiscock* v. *Hiscock*, 5 M. & W. 365; *Child* v. *Gibbert*, 5 M. & R. 71; *Gee* v. *City of Manchester*, 17 Q. B. 737; 1 Jar. Wills, 437; 2 Ib. 786; *Clayton* v. *Nora*, 5 Barn. & Ald. 636; *Herring* v. *Barrows*, 37 Eng. Rep. 26 n.; *Smith* v. *Bell*, 6 Pet. 68; *Bloomfield* v. *Eyre*, 54 E. C. L. 556; *Wescott* v. *Cady*, 5 Johns. Ch. 334; *Hart* v. *Thompson*, 3 Mon. B. 242; *Moore* v. *Howe*, Mon. T. B. 199; 3 Gray, 150; *Vedder* v. *Evertston*, 3 Paige, Ch. 281; *Cross* v. *Maltby*, 12 Eng. Rep. 20; *Waite* v. *Littlewood*, 4 Eng. Ch. App. Rep. 70.

*Heath & Fay* and *S. C. Shurtleff*, for the defendant.

The testator first gives his entire property to his four sisters and their children forever, with a condition. It is obvious that the testator intended that if any of his sisters should die childless, in that event her share should be divided among the other sisters and their children, and so on; so that ultimately the children of his sisters as a class should take the property after his sisters should all die. It is a primary rule of construction that a written instrument shall be so construed as to give effect to all its words if possible. In no other way can this will be construed and have the words " as aforesaid " mean anything. These words mean, if any of the sisters die leaving no children that such sister's share, so deceased, shall be divided among the other sisters and their children equally, the same as the original gift was divided; that is,—according to the first division. It is evident, also, that each of the sisters

would hold any portion received from a deceased sister the same as the portion they received directly and with the same condition attached to it.

The parol evidence was admissible.   1 Jar. Wills, 422.

If the will is construed as the plaintiffs claim, the condition does not take effect, and is void.   "The general rule is that when the context is silent, the words referring to the death of the prior legatee, in connection with some collateral event, apply to the contingency happening as well *after* as before the death of the testator."   2 Jar. Wills, 784; *Farthing* v. *Allen*, 2 Mad. 316; 5 New Eng. Rep. 61.   In construing a will, there is no distinction between real estate and personal property.   1 Jar. Wills, 879; *Moffatt* v. *Strong*, 10 Johns, 12; *Wescot* v. *Cady*, 5 Johns. Ch. 334; *Greggs* v. *Dodge*, 2 Day, 28; *Mcclosky* v. *Gleason*, 56 Vt. 264.

The sisters took only life estates, with remainder over to their children.   *Hart* v. *Thompson*, 3 Mon. B. 242; *Moore* v. *Howe*, 4 Mon. T. B. 199; *Attorney-General* v. *Wallace's Devisees*, 7 Mon. B. 611; *Ex parte, Rogers*, 2 Mad. 449; *Smith* v. *Bell*, 6 Pet. 68; *Blake* v. *Hawkins*, 8 Otto, 324; *Roe* v. *Jeffrey*, 7 Term, 589; 3 Gray, 150; 3 Paige, 381. The court in this State has adopted this doctrine.   *McClosky* v. *Gleason*, 56 Vt. 264.   See *Harmon* v. *Dickinson*, 1 Bro. Ch. 91; *Child* v. *Giblet*, 2 M. & K. 71; *Cooper* v. *Cooper*, 1 Kay & Johns. 658.

It might at first view seem inconsistent to hold that the share of Calista Shepard, she having died last without children, should go to her sister's children, when the will says " to the other sisters living ;" but it means it to go to the other sisters living, as aforesaid, which is in the same manner as the gift in the first instance, which included the children.   *Rowell* v. *Josselyn*, 59 Vt. 557; 18 Wall, 498; *Cross* v. *Maltby*, 15 Eng. Rep. 384; *Wait* v. *Littlewood*, 4 Eng. Rep. 760; S. C. L. R. Ch. 70; *Wake* v. *Varah*, 16 Eng. Rep. 781; S. C. 2 Ch. Div. 348; 2 Jar. Wills, 727, 751.

The opinion of the court was delivered by

Ross, J. The contentions in this case arise upon the construction of the residuary clause of the will of Justus W. Shepard, which reads : " I give and devise the residue of my estate, both real and personal, in equal shares to my four sisters, Catherine and Calista Shepard and Betsey Martin and Flavilla Batchelder, to them and their children forever, with this condition, that if either of my said sisters should die, leaving no children, then her share as aforesaid to the other sisters living, in equal shares."

The will is dated March 20, 1850. The testator deceased in 1867. In 1864 Flavilla Batchelder died, leaving one daughter, who has since deceased, leaving three children. Catherine Shepard deceased April 11, 1878, leaving no children ; Betsey Martin, October 2, 1882, leaving children ; and Calista Shepard, October 2, 1883, leaving no children.

The diligence of the counsel of the respective parties has brought to our attention a great number of decisions in which wills have been construed. A careful examination of most of the cases cited, as well as of elementary text books upon the same subject-matter, enforces the truthfulness and justness of the opening statements of Lord SELBORNE, L. C., in his opinion in *Waite* v. *Littlewood*, 4 Eng. Rep. 760. He says : " There can be nothing more certain than that every will is to be construed by itself, not with reference to other wills ; and all the light that can be got from other decisions serves only to show in what manner the principles of reasonable construction have, by judges of high authority, been applied in cases more or less similar." All the principles of construction are only aids in ascertaining, with certainty, the intention of the testator as found in the will itself. When that intention, if lawful, is once ascertained, it is the duty of the court to declare and enforce it. One of the most helpful principles of construction in ascertaining the intention of the testator is, to give force and effect to every clause of the will. It is not to

be presumed that he used an unnecessary word, or one to which no proper force can be given. It has not been intimated that any other part of the will aids the construction of the residuary clause quoted. The language of the bequest gives the residue to the four sisters and *their children forever.* The children can be legatees only in three ways : They can take *pro rata* with the sisters upon the decease of the testator ; or, in substitution of such of the sisters as should decease prior to the testator ; or, as reversioners, the sisters taking a life estate in the residue. It is apparent that the testator intended the children to take as certainly and effectually as the sisters ; for he provides that the share of any sister who shall die, leaving no children, shall pass to the surviving sisters. This also indicates a primary intention to provide, in the first instance, for the sisters, and subsequently for their children. The County Court evidently held that the children only took as substitutes for such of the sisters as should decease prior to the decease of the testator, and that the estate was to be fully distributed upon the close of the administration.

The counsel for the heirs has cited many cases, and many others may be found in the elementary text books, where the courts have held that an executory devise conditioned that if one of a class die without issue, his or her share shall pass to the survivor or survivors vested upon the decease of the testator, and not after. But in all cases of this kind, so far as observed, the testator had provided that the child, or children, if any there should be, should take in substitution of the deceased parent. Here the testator has made no such provision ; but instead has declared, that the residue shall descend to " their children ;" that is, all the children of the four sisters. Against the vesting of the shares on the death of the testator is the language of the condition, that the *share* of the sister dying, leaving no children, shall pass to the living sisters. The usual meaning of share is that portion of the estate which has already been set apart to a legatee ; and becomes such con-

temporaneously or subsequently, to the decease of the testator, but never antedates such decease. This may not be a very potent circumstance; but it is said in Vol. 3, 609 (5th Am. ed.) Jarman on Wills: " But although in the case of an immediate gift, it is generally true that a bequest over, in the event of the death of the preceding legatee, refers to that event occurring in the life-time of the testator, yet this construction is only made *ex necessitate rei* from the absence of any other period to which the words can be referred, as a testator is not supposed to contemplate the event of himself surviving the objects of his bounty; and, consequently, where there is another point of time to which such dying may be referred (as obviously is the case where the bequest is to take effect in possession at a period subsequent to the testator's decease,) the words in question are considered as extending to the event of the legatee dying in the interval between the testator's decease and the period of vesting in possession." Here the language of the bequest naturally refers to the death of any of the sisters, whenever that might occur. It could not be ascertained until that time whether she would die leaving no children; neither could the share of a sister thus dying after the decease of the testator pass to the surviving sisters, as the language of the condition naturally requires, if the share of each sister passed into her possession on the death of the testator. By holding that the death of the testator is the time, when the sisters then living should take in fee, and the children of the deceased sister, or sisters, should take only in substitution of their mothers, only a part of the children would, or might take at all; and such construction does not give full force to the language of the bequest " to them and their children forever." This naturally means, not a part, but all their children. Moreover, if the testator had intended that only the children of such of the sisters, as deceased while he was in life, should take, he would naturally have so expressed himself; or, if he had intended that they should take in substitution of their mothers, he would naturally have said " to them *or* their

children forever," instead of " to them *and* their children forever." If this bequest be construed as giving a life estate to the sisters, with remainder to their children surviving, full force is given to every clause, and every word of the bequest. Then the language of the condition is intelligible and easy of application. On the death of any of the sisters leaving no children—whenever that may occur—" then her share as aforesaid," that is, the share in which she took a life estate, and the children, the reversion, passes to the living sisters in equal shares ; but only as life tenants. The language of the bequest is not that of an unqualified gift to the four sisters. First, their children are to take in same manner with them. Then the condition shows, whatever estate they severally take, is liable to be defeated on the contingency, if any of them die, leaving no children. The language of the entire bequest impresses us that it was the testator's intention, as natural affection would prompt, to provide primarily for his sisters. When we look at the condition, we find they were not to take in fee, for the share thus taken was to be kept intact so it could, on the contingency there named, pass to the surviving sisters. Then their children were to take forever, or absolutely. Such being the construction, we place upon the language of the bequest, there is no latent ambiguity in the bequest which would permit the admission of the offered testimony, and there is no occasion to discuss the question when such testimony is admissible. On this construction, the shares of Catherine Shepard and Calista Shepard, who died leaving no children, pass equally to the grandchildren of Flavilla Batchelder and to the children of Betsey Martin. The question has not been discussed whether by " their children " the testator intended they should take *per capita* or *per stirpes*. But the usual rule, in such cases, is they take *per stirpes;* that is, the children take only that of which their mothers would be life tenants, if they had survived the sisters who died leaving no children. It is apparent if all the sisters had died leaving children, the children of each would take only the share of

their mother.   But it is contended that the share of Calista Shepard, inasmuch as when she deceased, there was no surviving sister to take under the conditional clause, descended to her heirs.   But if we have correctly construed the will, the whole residue was only given to the sisters for life, and then was to pass to their children.   Hence the fee of the residue vested at once in the children, the share of each child subject to be increased by the death of any of the life tenants, leaving no children.   The authorities are to the same effect.   A bequest to two daughters, and if one should die without issue, then to the surviving daughter and her issue.   One of the daughters married and died leaving issue.   Then the unmarried daughter died ; and it was held that the money went to the issue of the married daughter although she did not survive her sister. *Harman* v. *Dickenson*, 1 Bro. Ch. 91.   To the same effect in principle is *Cross* v. *Maltby*, 15 Eng. Rep. 384,and *Wake* v. *Varah*, 16 Eng. Rep. 781.

Judgment of the County Court reversed and judgment that the original share of which Flavilla Batchelder would have been life tenant if alive at the death of the testator was properly decreed to her daughter ; that the original share of which Betsey Martin was life tenant be distributed to her children ; and that the accruing shares of which Catherine Shepard and Calista Shepard were life tenants, be distributed, one half to the children or representatives of the children of Betsey Martin, if any have deceased since the decease of the testator, and the other half to the grandchildren of Flavilla Batchelder.