## IN RE MARY E. KENISTON'S WILL.

### October Term, 1900.

Opinion filed February 12, 1901.

Present: TAFT, C. J., TYLER, MUNSON, START and WATSON, JJ.

*Construction of wills—Intention of the testator gathered from the will as a whole—The words "I give and bequeath" do not necessarily convey an absolute estate in either realty or personalty—V. S. 2348—Construction which avoids repugnancy favored—*One clause of a wife's will was "I give and bequeath to my husband, Nathan Kenniston, the sum of two thousand dollars, also ·my farm in Greensboro known as the Conant place." The following clause in terms disposed of what remained of the above mentioned property after the husband's decease. Under these provisions, the husband took only a life estate.

APPEAL from a decree of the Probate Court for the district of Orleans construing the will of Mary E. Keniston. L. A. Jackson, administrator of the estate of Nathan Keniston was appellee. H. S. Tolman, administrator of the estate of Mary E. Keniston, The American Board of Commissioners for Foreign Missions, The Woman's Board of Missions, Auxiliary to the last named Board, and The American Home Missionary Society, were appellants. Trial by court, Orleans County, September Term, 1900, *Taft*, C. J., presiding. The clauses of the will which were in controversy, were the second and third, which were as follows:

"2nd. I give and bequeath to my husband, Nathan Keniston, the sum of two thousand dollars; also my farm in Greensboro, known as the Conant place.

3rd. After the decease of my husband, Nathan Keniston, it is my will that what remains of the above mentioned property shall be divided as follows, viz: One-third shall be given to the American Board of Commissioners for Foreign Missions, incorporated in Massachusetts in 1812; and one-third shall be given to the Woman's Board of Missions, Auxiliary to the American Board of Commissioners for Foreign Missions; and one-third shall be given to the person, who when the same is payable, shall act as treasurer of the American Home Missionary Society formed in the City of New York, in the year of 1826, to be applied to the charitable uses and purposes of said society and under its direction."

The following clauses of the will which disposed of property began each with the words "I give and bequeath" or with the words "I give." The court *pro forma* rendered judgment affirming the decree of the Probate Court, by which it was adjudged that Nathan Keniston took an absolute estate under the second clause of the will, and that the legatees named in the third clause took nothing. The appellants excepted.

*J. W. Redmond* for the appellants.

*Young & Young* and *J. P. Lamson* for the appellee.

TYLER, J.   The case here is upon the construction of the second clause in the will of Mary E. Keniston, which is as follows:

*I give and bequeath to my husband, Nathan Keniston,. the sum of two thousand dollars, also my farm in Greensboro known as the Conant place.*

It is contended on the one side that the husband took the two thousand dollars and the farm absolutely; on the other, that he took only a life estate.

There is no rule of law to guide us in the construction of this clause other than to ascertain from the entire contents of the will what was the intention of the testatrix in respect to the quantity of the estate which she intended to have vest in her husband at her decease, and what testamentary provision she desired to make for the other persons and corporations named.   The third clause provided that what remained of "the above mentioned property" after her husband's decease should be divided among the American Board of Commissioners for Foreign Missions, the Woman's Board of Missions and the American Home Missionary Society.   By subsequent clauses she made small bequests amounting to $335 to her relations, and then, after giving her husband the use of certain of her furniture and her sisters her wearing apparel, she made the American Missionary Association her residuary legatee. So it appears that the testatrix had other persons than her husband in mind as objects of her bounty, though provision for him evidently was her first care.   They had no children.

If the construction claimed by the appellee is correct the third clause is repugnant, and the three corporations take nothing, for the words, "the above mentioned property," refer to no other property than that the testatrix had given to her

husband in the second clause; and the third clearly expresses the intention that the remainder should pass to the three corporations after her husband's decease. The intention that these corporations should receive what remained of this property upon the happening of that event is as clearly expressed as that her husband should have it during his life, and effect must be given to this intention unless the words of the first clause are necessarily operative to convey the estate absolutely.

Decided cases are not of much value unless they arise upon facts similar to those in the case in hand.

It was said in *Hibbard* v. *Hurlburd,* 10 Vt. 178, that of the testator's intention to create both estates there could be no doubt, and that that intention must be effectual unless there was a legal impossibility that they should subsist together.

In *McCloskey* v. *Gleason,* 56 Vt. 267, the clause in controversy was: "After all my lawful debts are paid, I will to my wife, * * *, all my property, both personal and real; but at her decease none of said property is to go to her heirs or my heirs, but it is to be economically used at her decease in constructing a monument; * * * ." Held, that the first clause was limited by the others, and that the wife took only a life estate with the right to use the principal if needed for her support.

In *Smith* v. *Bell,* 6 Pet. 68, the clause was: "Also I give to my wife, * * * ,all my personal estate whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and funeral expenses, which personal estate I give and bequeath to my said wife, * * * , to and for her own use and benefit and disposal absolutely; the remainder of the said estate after her decease to be for the use of the said Jesse Goodwin;" held, that this conveyed only a life estate to the wife, and the reversion to the son Jesse.

Marshall, Ch. J., said: "It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to the wife, or which would more clearly express that intention.  But the testator proceeds: 'The remainder of said estate after her decease, to be for the use of the said Jesse Goodwin.'  Jesse Goodwin was his son.  These words give the remainder of the estate, after the wife's decease, to the son, with as much clearness as the preceding words give the whole estate to the wife.  They manifest the intention of the testator to make a future provision for his son, as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife."  The doctrine is here stated that the intention of the testator, if ascertainable from the language of the will, when applied to his circumstances and the objects of his bounty, must govern even if to accomplish it a limitation has to be placed upon language·that is absolute in terms.

In *Biddens* v. *Potter,* 10 Ch. Div. L. R., 733, the testatrix devised all her estate to a sister "for her own use and benefit absolutely," and afterwards by a codicil to her will which she directed to be taken as part thereof, said: "after the death of my sister, I give and bequeath all property of mine which may then be remaining to my brother;" held, that the effect of the codicil was to cut down the gift to the sister to a life estate.

In *Stowell* v. *Hastings,* 59 Vt. 494, which is relied upon by the appellee, the words were: "I give to my beloved wife, * * * , the residue and remainder of my estate, both real and personal, for her benefit and support, to use and dispose of as she may think proper.  If any of the estate should be left in my wife's possession at her death, it is my will that the same should be divided equally between my brothers and sisters."  This clause was held to convey an absolute estate in the residue for the reason that it was given for her benefit and sup-

port with an absolute power of disposition, for the court said it is a general rule that if an estate is given to a person generally or indefinitely, with an absolute power of disposition, it carries a fee, and the remainder over is void for repugnancy. Several cases are cited upon the appellee's brief to the effect that an absolute power of disposal in the first taker renders a limitation over repugnant and void.   In *McCloskey* v. *Gleason* the court remarked that language apparently giving the legatee unqualified power of disposal has frequently been held to convey but a life estate.    *Smith* v. *Bell* seems to have turned upon the testatrix' manifest intention to create a remainder over rather than upon her power of disposal which was construed to mean for life.    The decision in the Judevine will case was also based upon the *jus disponendi*.   The last two cases are easily distinguishable from the others cited.

In *Ide* v. *Ide,* 5 Mass. 499, it was held that the limitation over was void for the reason that the necessary implication from the language used was, that the testator intended that the first taker might dispose of any or all of the estate devised and leave nothing at his death, thus making two inconsistent bequests.    In the present case there is no such necessary implication;—no language is employed that necessarily conveys the absolute estate to the husband.

It appears that the will was executed in March, 1893, that it was probated five years later, and that under the decree of distribution made in March, 1900, the estate was sufficient to pay only ninety per cent. of the cash legacies, including the $2,000 to the estate of Nathan Keniston, who had deceased at the age of eighty.

It is argued by the appellee's counsel that the testatrix must be presumed to have known that her husband would be entitled to $2,000 of her estate and half the remainder, and that the bequest is significant that she intended to give him the

amount of property that he would have taken under the statute.

It is probable that the testatrix intended to give her husband in *amount* what he was entitled to by law, and that she expected the farm would equal in value half the remainder of her estate above the $2,000; but her intention is clearly expressed to limit his bequest to a *life use.* There could be no "remainder" if he took the $2,000 absolutely and the farm in fee. If she had intended that he should take his bequests absolutely it may be presumed that she would have said so and given to the corporations and other legatees what remained of her estate above the absolute bequests to her husband, instead of giving the corporations the remainder of the estate which she gave her husband. If the testatrix had desired that her husband should have as much of her estate as the law gave him, there was no occasion for the third clause, the evident purpose of which was to limit him to a life estate.

As the husband seems not to have waived the provision made for him in the will and claimed his right under the statute, it is not impossible that the will was made with his approval. It may have been his wish as well as his wife's that what he did not require for his support should pass to the three corporations at his death.

The ninth clause gives the *use* of certain furniture to the husband, and from this fact it is argued by the appellee that if the testatrix had desired to give her husband the use only of the $2,000 and the farm she would have employed the same term. If the second and third clauses were of doubtful meaning other clauses in the will might well be resorted to for aid in their interpretation; but here the meaning is clear and unambiguous, and the only question is whether the second clause conveyed such an estate that there was any remainder for the third clause to operate upon. The question is, what

does the second clause convey, considered, as it must be, in connection with the third?

The cases cited by the appellee support the settled rule of construction that an absolute gift in a will cannot be defeated by a subsequent repugnant clause—that a limitation over after a fee is repugnant to the first estate granted.   Most of the cases turn upon the peculiar phraseology of the clause in controversy.   As was said in *Benson* v. *Corbin,* 145 N. Y. 351, courts will refuse to cut down an estate already granted in fee or absolutely when the supposed terms of limitation are to be found in some subsequent portion of the will, and are not clear in themselves, unmistakable and certain so that there can be no doubt of the meaning and intention of the testator. *Banzer* v. *Banzer,* 156 N. Y. 429.

An examination of many cases shows that courts have differed in their construction of wills when the clauses in dispute were substantially the same.   In *McKenzie's Appeal,* 41 Conn. 697, a testator gave his widow certain personal estate and provided that if any remained at her decease it should be equally divided among his children; it was held that an absolute power of disposal was given to the widow, and that the gift over was inconsistent with this power and void.   Other cases hold that the devise over is a mere recommendation or request.   But in *Taylor* v. *Martin,* (Penn.) 18 Atl. R. 920, the testator in one item of his will devised and bequeathed to his wife all his estate, "real, personal, and mixed, to her sole and separate use, behoof, and control forever."   In a subsequent item he provided that: "it is also my desire and wish after my wife's death, that my house and lot * * * shall go to my daughter, * * * , for her sole and separate use during her natural life," held, that the testator intended to give his wife a life estate only.

In *Shepard's Heirs* v. *Shepard's Estate,* 60 Vt. 116, the court quoted with approval the language of Lord Selborne, L. C., in *Waite* v. *Littlefield,* 4 Eng. Rep. 760: "There can be nothing more certain than that every will is to be construed by itself, not with reference to other wills; and all the light that can be got from other decisions serves only to show in what manner the principles of reasonable construction have, by judges of high authority, been applied in cases more or less similar." In *McCloskey* v. *Gleason,* 56 Vt. 267, the court said: "The intention of the testator, if directed to the accomplishment of lawful purposes, is to govern in the construction of his will. That intention is to be gathered from all the provisions of the will. The language in which it is expressed, unless ambiguous, is to receive its natural and usual meaning. If different provisions of the will apparently conflict, such construction is to be given to them as will give effect to all the provisions, unless a clear repugnancy exists between the different provisions. General language, broad enough to pass the entire property of the legacy to the legatee, may be limited in its scope and effect by other provisions of the will."

The case of *Richardson* v. *Paige,* 54 Vt. 373, illustrates this rule, when the words of the will were: "I give, etc., to my son, Wilbur Paige, one equal undivided half of all the residue of my estate, both real and personal. To have and to hold to him, the said Wilbur Paige, his heirs, executors, administrators and assigns forever; subject, nevertheless, to the conditions and provisions following, which are hereby made for the contingent benefit of Alice Paige, wife of the said Wilbur Paige, to wit, in case the said Wilbur F. shall die, leaving the said Alice surviving him, then, in that case, it is my will that said Alice shall have the use of the entire share, or legacy hereby bequeathed to him the said Wilbur F., or so much as shall remain on hand at the time of his decease." The court

held that though the bequest was of the absolute and entire fee to Wilbur F., his heirs, etc., it was subject to all the provisions made in the same instrument for the contingent benefit of Alice.

In *Jones* v. *Jones,* 66 Wis. 310, the clause was, "To my beloved wife, * * * , all that is in my possession at the time of my decease, and also my wife to have the right to sell the estate if she chooses, and after her decease the property to be parted to my dear children in equal shares;" held, that the widow took an estate for life only with power to sell such estate, and the children a vested remainder in fee.   This is in accord with what this court said in *Stowell* v. *Hastings* that "In determining what estate is given the first taker, the whole will should be considered and all the clauses construed together.   Even in those cases where an absolute estate is in terms given, if subsequent passages unequivocally show that the testator meant the legatee to take a life interest only, the prior gift is restricted accordingly."

In this case the intention of the testatrix is clear to provide for her husband during his life, and to have what remained at his death pass to the corporations named.   The third clause could have no effect unless there was a remainder at his death; therefore the third clause is not inconsistent with the second, and need not be rejected for repugnancy, for the two intentions can subsist together and all parts of the will be sustained.

*Pro forma judgment reversed and judgment that Nathan Keniston took only a life estate under the second clause of the will; that the three corporations named in the third clause of the will are entitled to what remains in the administrator's hands of the bequest to Nathan Keniston.   Judgment to be certified to the Probate Court.*

Taft, C. J., not voting.