Alvin DeFrates, Appellee, *vs*. The Central Union Telephone Company, Appellant.

*Opinion filed December 22, 1909—Rehearing denied Feb. 4, 1910.*

Master and servant—*telephone lineman assumes risk of falling of rotten pole.* A telephone lineman assumes the risk of injury from the falling of a decayed pole which he had climbed in order to detach wires preparatory to taking down the pole, where he has worked as a lineman for several years and knows that he is required, under the company's rules, to make his own inspection of poles before climbing them and that no other inspection is made.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding.

W. B. Mann, Conkling & Irwin, and David K. Tone, for appellant:

The plaintiff's own evidence shows that there was an invariable custom preceding the accident, and with which he was thoroughly familiar, that linemen should themselves inspect all poles before climbing them, and if the poles were found to be unsafe then they should be taken down without climbing. Under such a custom the employees of telegraph and telephone companies assume the risk of all dangers to which they are exposed by reason of defective and

rotten poles, and therefore cannot recover. *Sias* v. *Lighting Co.* 73 Vt. 35; *McIsaacs* v. *Electric Co.* 172 Mass. 89; *McGorty* v. *Telephone Co.* 69 Conn. 639; *Flood* v. *Telegraph Co.* 131 N. Y. 603; *Kellogg* v. *Tramway Co.* 72 Pac. Rep. 609.

The plaintiff was injured while he was engaged in dismantling the wires and poles in question. The general rule that a master must exercise reasonable care to furnish a reasonably safe place for his servant to work does not apply where a servant is engaged in dismantling and removing structures. *Montgomery* v. *Robertson,* 229 Ill. 466.

T. J. Condon, and Albert Salzenstein, for appellee:

The appellee, in removing the wires, assumed no risks as to latent or hidden defects which ordinary tests would not have discovered and which were known or should have been known to appellant. *Mann* v. *Traction Co.* 236 Ill. 30; *Mining Co.* v. *Kaiser,* 229 id. 29; *Coal Co.* v. *Thil,* 228 id. 233; *Telegraph Co.* v. *Likes,* 225 id. 249; *Iron Co.* v. *Beck,* 212 id. 268; *Foundry Co.* v. *Clark,* 214 id. 399; *Railroad Co.* v. *Pell,* 209 id. 25; *Ehlen* v. *O'Donnell,* 205 id. 38.

Notice, or even contract, would not change the master's duty in the matter. *Coal Co.* v. *Clark,* 197 Ill. 514; *Coal Co.* v. *Lundak,* 196 id. 594; 1 Labatt on Master and Servant, sec. 417.

It was the duty of the defendant to have used reasonable care and to have furnished the plaintiff a reasonably safe place to work, and under the facts averred and proven in this case the pole which fell was such a place, and no other allegation in plaintiff's declaration in regard thereto than as made was necessary, and upon proof of the facts averred plaintiff was entitled to recover. *Railroad Co.* v. *Maroney,* 170 Ill. 520; *Telegraph Co.* v. *Likes,* 225 id. 249; *Riker* v. *Railroad Co.* 64 App. Div. (N. Y.) 357; *Drum* v. *Telegraph Co.* 80 Vt. 1.

Mr. Justice Vickers delivered the opinion of the court:

DeFrates, appellee herein, recovered a judgment for $1500 against the Central Union Telephone Company in the circuit court of Sangamon county. The Appellate Court for the Third District affirmed the judgment below, and the telephone company has prosecuted a further appeal to this court.

The action was in case for a personal injury received by appellee, caused by the fall of a telephone pole which appellee had climbed for the purpose of cutting the wires loose so that the pole could be taken down. The first count of the declaration charges that appellant was the owner of and operating a telephone line near the city of Peoria, and that appellee was an employee of appellant and engaged in stringing, taking off and repairing wires on appellant's lines; that on the sixth day of August, 1907, appellee was ordered to go, and went, on one of appellant's poles for the purpose of taking off wires, and that it became and was the duty of appellant to use reasonable care to have furnished appellee a reasonably safe pole upon which to stand and do said work, and that appellant, neglecting its duty in that behalf, sent appellee on a pole which was rotten and defective, which condition was not known to him and could not have been known by the exercise of ordinary care, and that appellee climbed said defective pole, and while removing said wires, and in the exercise of ordinary care for his own safety, said pole broke and fell, by reason of which appellee's leg was broken. The second count of the declaration is substantially the same as the first, with the added averment that the defect in said pole should have been known to appellant in the exercise of reasonable care.

The evidence shows the following facts: Appellee was a lineman employed by appellant and was engaged in the line of his duty about five miles north-west of Peoria in August, 1907. About eighteen months before this time a Mr. Keene, a farmer, arranged with appellant to put a

telephone in his house and connect him with its telephone system.   The main line of appellant's wire was about 250 yards south of Mr. Keene's farm house.   In January, 1906, the company set three poles on Mr. Keene's farm and wires were strung on them from the farm house, making a connection with the appellant's line at Houk road.   The pole nearest Mr. Keene's house was set about twenty feet south of his barn, within an enclosure that had at one time been used as a cattle and hog lot.   Mr. Keene wanted a change made in the location of the poles so that the wire would come into his house from the east side instead of the south. Appellee was working at that time under a foreman by the name of Woods.   Appellee testifies that on the day of the accident his foreman gave him instructions to go over to Mr. Keene's farm and take the wires down from the poles; that they were going to move the poles to another place.   After the line had been installed, at Mr. Keene's request another pole was put in near the barn for the purpose of elevating the wire.   Appellee testified that he went to the farm house, jerked the first pole, which was one between the farm house and the barn, and then climbed up the pole, untied the wires and came down.   He then went to the next pole, being the one situated near the barn.   He took hold of that pole, shook it, looked at it, but discovered nothing wrong with it.   He then climbed to the top, untied the telephone wires and walked around to the other side of the pole to the guy wire, and was about to cut that wire when the pole snapped, fell to the ground and inflicted the injury complained of.   The telephone wires on these poles ran north and south and the guy wire extended east from the pole and was fastened to a rail fence about twenty feet from the pole.

The evidence shows that appellee was an experienced lineman and had worked in that capacity for three years at the time he was hurt; that it was his daily business to climb poles and detach wires and take down cross-arms and

do other work in connection with constructing and repairing defective lines. He admits in his testimony that it was a lineman's duty to examine poles for defects before climbing them, and that it had been his uniform custom to inspect every pole before he climbed it, in order to satisfy himself whether it was safe. If he discovered, by shaking the pole or otherwise, that it was not safe to climb he would notify the foreman that the pole was unsafe to work on, and in such case the pole was pulled down with a team of horses. Appellee admits that he had received a copy of the following notice and was familiar with its contents:

"CENTRAL UNION TELEPHONE COMPANY.

"*Important Notice.*—The attention of linemen, inspectors, repairmen, and all other employees of this company having occasion to climb poles or work upon the same, is hereby called to the hazardous conditions surrounding such work and to the fact that all poles are liable to decay beneath the surface of the ground. Every such employee is hereby notified to carefully inspect each pole before climbing the same, and to thoroughly test each and every pole, both above and below the ground, to avoid accident. You will be held responsible for any failure to observe this rule.

Central Union Telephone Co.,
H. F. Hill, *Gen'l Manager.*"

There is some evidence that the pole in question was decayed on the outside when it was first set on Mr. Keene's farm, although the proof shows that the poles were hauled on frozen ground, by means of a chain, a distance of three-quarters of a mile. Under this evidence appellant contends that the court erred in refusing to direct a verdict in its favor, on the ground that the injury resulted from an assumed risk. In the view that we take of this case it will not be necessary to consider any of the other assignments of error.

So far as we are advised no case has heretofore been presented to this court growing out of the climbing of a rotten or decayed pole by a lineman. Cases of this character have been frequently decided in other States, and the rule uniformly applied is, that it is not the duty of the

telephone company to inspect its poles below the ground and inform the linemen which were safe and which were unsafe to climb. (*Sias* v. *Consolidated Lighting Co.* 73 Vt. 75; *McGorty* v. *Southern New England Telephone Co.* 69 Conn. 635; *Flood* v. *Western Union Telegraph Co.* 131 N. Y. 603; *McIsaacs* v. *Northampton Electric Co.* 172 Mass. 89; *Kellogg* v. *Denver City Tramway Co.* 72 Pac. Rep. 609.) The evidence does not show that the appellant furnished inspectors to go ahead of the linemen and examine the poles and inform the linemen what poles could be safely climbed. Appellee knew that there was no such inspection made and that it was the uniform custom for linemen to examine the poles themselves and determine whether the poles could be safely climbed. During the three years that appellee had worked for appellant he necessarily must have become familiar with the indications of decay and the usual and best method of determining when a pole was safe. With this experience and knowledge he was as competent to determine whether the pole in question was safe as any inspector the company could have sent to examine the same. Appellee must also have known that a pole will often stand when supported by wires and guy wires when it would fall of its own weight if unsupported. With all the knowledge that the appellee had acquired in his three years' experience as a lineman and the duty resting upon him to inspect for himself under the rules of the company, and with full knowledge that there had been no inspection made of this pole upon which he had a right to rely, in our opinion the appellee must be held to have assumed the risk of injury from the pole falling and that the court erred in refusing to direct a verdict for appellant.

It follows from this, necessarily, that the judgments of the Appellate and circuit courts must be reversed and the cause remanded to the trial court, which is accordingly done.

*Reversed and remanded.*