## Morris H. Beard, Appellee, v. Baltimore & Ohio Railroad Company, Appellant.

### Gen. No. 8,037.

1. MASTER AND SERVANT—*what appliances are not within the Safety Appliance Act.* A telephone lineman's spurs and belt are not within the Safety Appliance Act, and the defense of assumed risk is, therefore, available in an action, under the Federal Employers' Liability Act, by a lineman to recover for injuries caused by the use of inadequate spurs and failure of the carrier to supply a belt.

2. MASTER AND SERVANT—*when order to do hazardous work does not relieve of assumed risk.* In a telephone lineman's action for personal injury damages, the plaintiff is not relieved from the defense of assumed risk because his employer ordered him to do hazardous emergency work, where his employer was not present while the work was being done, did not order him to face a specific emergency but left all to his own experience.

3. MASTER AND SERVANT—*when lineman assumes risk of inadequate spurs.* An experienced telephone lineman cannot recover damages for personal injuries incurred while carrying out his employer's orders to repair ice broken wires without proper climbing spurs or belt, for he assumed the risk by doing the work under his own direction without complaining beforehand of his equipment.

Appeal by defendant from the Pana City Court of Christian county; the Hon. JOHN W. PREIHS, Judge, presiding. Heard in this court at the October term, 1926. Reversed with a finding of fact. Opinion filed February 28, 1927.

GRAHAM & GRAHAM and H. B. HERSHEY, for appellant.

L. G. GRIFFITH and McDAVID & MONROE, for appellee.

MR. PRESIDING JUSTICE CROW delivered the opinion of the court.

Appellee and appellant will hereafter generally be designated as plaintiff and defendant respectively. Some fault is found by plaintiff with the defendant's statement of the case in its brief and an additional statement is made in the brief of plaintiff. For the purpose of review we adopt substantially the statement made by plaintiff, it being less concise but including elements of the case proper to be noticed in determining questions presented for review.

The declaration consists of one count and alleges that on December 31, 1924, defendant was a common carrier engaged in interstate commerce, and that its road extended through Christian county, Illinois; that as an adjunct of said railroad it maintained and used a system of telegraph and telephone wires suspended from poles; that on the date and at the place aforesaid the plaintiff was in the employ of the defendant in its telephone maintenance department; that, as a result of a rain and sleet storm, the signal wires and poles upon which they were suspended became deeply encrusted with ice to such an extent that many wires were broken and had fallen to the ground; that plaintiff was ordered by an agent of the defendant to go out along the line of the railroad and repair wires and fasten them to the poles, which he, as an employee

of defendant, undertook to do; that it became and was the duty of the defendant to furnish plaintiff an assistant and furnish him with spurs long and sharp enough to go through the coating of ice on said poles when the plaintiff should climb the same, in his work, so as to support the plaintiff and prevent him from falling; that it was the duty of the defendant to exercise due care for the safety of plaintiff, to provide him with a belt or sling with suitable buckles and attachments by which he could support himself at the top of the pole while engaged in work; that defendant failed to furnish spurs sufficiently long and sharp enough to penetrate the ice on the poles, and failed to furnish a suitable belt to uphold the plaintiff while he was working on the poles, and while plaintiff, in the exercise of due care for his own safety, was engaged in the business of the defendant at the top of a pole in repairing wires the spurs provided plaintiff, by reason of being too short to penetrate the ice on the pole, slipped and gave way, and the plaintiff, not having been provided with any suitable belt for a support, through the negligence of the defendant, then and there fell from said pole to the ground and was injured. The general issue only was filed and from this fact it is urged that some questions of law argued by defendant are not open for consideration.

Beginning December 18, 1924, a severe storm prevailed attended with rain, turning to coating of ice on trees, telephone and telegraph wires from Pana, Illinois, to points westward. The result was that wires and poles on which they were carried became covered with ice, and telephonic and telegraphic communications, as well as all railroad traffic, were seriously obstructed. Plaintiff was an experienced lineman and telephone maintainer. He was 37 years old and entered the employ of defendant January 5, 1918, and worked continuously for it until he received the injury

complained of. His work on the line was from Flora
to Beardstown, to repair all wires at the time affected
by the sleet storm. He went out in obedience to the di-
rection of Pritchard, a trip despatcher at Washington,
Indiana. Pritchard told him the wires were out from
Pana west, and to repair them. He told Pritchard he
would go, and waited until the train came and went
to work. He received no belt, though promised one,
he says, by a division operator of defendant three
years before. He asked only once. The answer to
that request was he would try to get one. The equip-
ment the defendant furnished was a pair of spurs, a
pair of "posts" to pull wire, large pliers and conduc-
tors. The spurs were used for climbing poles. They fit
on the bottom of the foot and leg and fasten with straps.
The spur is on the side next to the bottom of the foot
—"the inside of the foot." As to his mode of work,
he climbed the poles by sticking the spurs in them.
To hold himself on the pole to work, he stuck the spur
fastened on his left foot through the ice into the pole,
putting his right leg around it to hold him. The in-
jury occurred when he removed the leg from around
the pole and the "left leg gave way right now, imme-
diately." He testified that he could not tell whether
the spur went through the ice or not. The ice was
about two inches thick on the poles he says, and the
wires were "awfully heavy." When he struck the
ground he lit on his feet with the left leg folded under
him. He "scooted" into the ditch at the side of the
road and lay there five minutes before he got up. He
continued to work until January 12, and had no treat-
ment until then. In performance of his work he was
alone and pursued his own course as to what to do and
the manner of doing it. He had worked at the same
employment about seven years under the same im-
mediate superior. The points urged for reversal are:
Refusing to direct a verdict; assumption of risk; im-

proper conduct of counsel for plaintiff at the trial; giving improper instructions for plaintiff; refusing proper instructions offered for defendant; admitting improper evidence by the physician testifying for plaintiff.

Counsel have assumed, as it seems to us, that the action is one grounded upon the Federal Employers' Liability Act [Cahill's St. ch. 124, ¶ 321 et seq.]. The declaration avers that "defendant was a common carrier engaged in interstate commerce and as an adjunct of said railroad it maintained and used a system of telegraph and telephone wires suspended from poles," followed by an averment that plaintiff was employed in the telephone maintenance department. Granting that the action is well laid upon that act, no advantage thereby accrues to plaintiff. It is not contended by defendant that plaintiff was guilty of contributory negligence. It is contended that he assumed the risk of danger attending his work under the circumstances shown by the evidence and those circumstances are not a matter of controversy. If the action is predicated on the Federal Employers' Liability Act, that defense is available because section 4 [Cahill's St. ch 114, ¶ 324] provides that such employee shall not be held to have assumed the risks of his employment in any case where the injury is occasioned by the violation by such common carrier of any statute enacted for the safety of employees. This provision is found in chapter 2, title 64, Common Carriers (Barnes' Federal Code). The basis for the exception is found in chapter 1 of that title, which relates only to safety appliances upon engines, cars and other equipment of trains, boats and similar instruments of commerce. The facts of this case do not bring it under the Safety Appliance Act. The doctrine of assumed risk is not therefore affected by the congressional enactment. *Seaboard Air Line Ry. v. Horton*, 233 U. S. 492, 58 L. Ed. 1062.

In considering the question of assumed risk, it is pertinent to notice that plaintiff was directed by his superior to go out on the line and relieve the poles and wires of the ice condition then prevailing. He received no specific directions. Of mature years, with 20 years' experience in that sort of work, he took the implements that were at the depot for that purpose and went on the first train, getting off at the first place where there seemed to be ice trouble. Those implements he had used before and knew their condition as well if not better than his superior. He knew well the condition he was encountering in performing the work, and that the master had not created, nor contributed to, the conditions. He now disclaims any contention that the attachments used for climbing the ice-covered poles were defective. His complaint of the master as averred in the declaration, and as contended at the trial, and in this court, is that the appliances were not sufficient to enable him to do safely the work he was assigned to, and which was in the line of his employment.

Before considering the question of assumption of the risk of injury, it is well to notice the oft repeated statement that plaintiff was directed or ordered by his superiors to do the work. That fact is admitted. But we think his case is not aided by it. The rule that where the master orders the servant to do something hazardous in the course of his employment, and while doing it he is protected by the order, applies only where the master orders the servant to do something confronted with an emergency attended with hazard, he is specifically ordered to do it, he is relieved of the consequences of any assumption of risk, unless the danger be so imminent that a reasonably prudent person would not undertake it. But the principle applies only where the master is present while work is being done and gives the order to do specific work attended with danger or to work in a specific manner. See *Illinois*

*Steel Co. v. Schymanowski,* 162 Ill. 447, 459 *et. seq.,* where the principle of responsibility is applied and reasons for it given.

But that salutary rule founded on the master's presumed superior knowledge of conditions and of danger does not apply to plaintiff. He does not come within the reason of the rule, and therefore is not within the rule. If the pole he was required to climb to adjust the wires was covered with ice, and if to climb it was hazardous or extra-hazardous, he was the only one that knew it. No one was present urging him to it. He knew the ice conditions. It was that condition he was sent to correct. He was left to the exercise of his own judgment as to the manner in which he would accomplish it. As to that, he was the master. If the ice was so thick on the pole as to render the work dangerous, and if the spur which he used to climb it was inadequate, he knew it. If in doubt as to its being safe, he was bound to act with care and circumspection commensurate with the danger confronting him. Plaintiff disclaims any defect in the climbers. He insists they were insufficient to enable him to perform his work safely. He claims they were deficient. He makes a distinction where there is no material nor practical difference. The alleged deficiency was that the spurs were not long enough to penetrate the ice, but he knew that and uncomplainingly used them, though he could have ascertained before attempting to climb the pole whether they were adequate. There was nothing about the employment or the peril he did not actually know or could not readily ascertain.

The decided cases support the insistence of defendant that on account of the knowledge and situation of plaintiff he assumed the risk of the employment and for that reason cannot recover damages for his injuries. *Ross v. Chicago, R. I. & P. Ry. Co.,* 243 Ill. 440; *DeFrates v. Chicago U. Tel. Co.,* 243 Ill. 356;

*McCormick Harvesting Mach. Co. v. Zakzewski,* 220 Ill. 522; *Armour v. Brazeau,* 191 Ill. 117.

In the *Ross* case the court says (444-445):

"The rule of law in reference to assumed risk has been often stated by this court, and the doctrine applies as well to those risks which arise and become known to the servant during the service as to those in contemplation at the time of the original hiring. (2 Cooley on Torts, —3rd ed.—1044.) The usual and ordinary dangers incident to the service are assumed by the contract of hiring. One entering into an employment which is necessarily more or less dangerous is held to take those dangers into consideration in making his contract to work, and for an injury received from such dangers the servant cannot recover."

In the *DeFrates* case it is held that a lineman of 3-years' experience was bound to know whether a rotten pole could safely be climbed, and reversed judgment for plaintiff, an injured workman, without remandment. In the *Zakzewski* case, the court held that the danger arising from lumber coated with ice in the wintertime is one of the ordinary risks of the employment of one experienced in the work in a lumberyard; that a servant assumed not only the ordinary risks incident to his employment, but also all dangers which are obvious and apparent; and if he voluntarily enters, or continues, in the service, knowing, or having means of knowing its dangers, he is deemed to have assumed the risks and to have waived all claims against the master for damages in case of personal injury resulting from such dangers. In the *Armour* case, an action to recover on account of a defective scaffold, the trial court refused an instruction telling the jury that before the plaintiff could recover he must prove by a preponderance of the evidence (1) that the plank was insufficient, weak, or defective and that the accident happened as a result; (2) that the

defendants had knowledge or notice of such insuffi-
ciency, or that they might have had notice thereof by
the exercise of ordinary care; (3) that the plaintiff did
not know of such insufficiency and that he had no
means of knowledge thereof equal to that of the de-
fendants; (4) and that he was in his relation to the
accident in the exercise of ordinary care. Citing au-
thorities, the court says:

"If a defect in an appliance is open and obvious, so
that by the exercise. of ordinary care in the use of the
appliance the employee will have knowledge of the de-
fect, he is bound to take notice of the defect. He
cannot assume a fact against his own knowledge, and
assume that a defect open to his observation does not
exist."

Plaintiff in this case was in no position under any
view of the facts and the law applicable to them suc-
cessfully to charge defendant with the breach of any
duty owing to him by it. Upon the facts stated by
plaintiff there was nothing about the employment,
the particular work in hand, the condition of the
climbers, whatever it may be called, rendering them in-
adequate, that he did not know and from his experience
was bound to appreciate. If he undertook to work
without a belt, and if it was necessary to his safety,
no one in the employment knew it better than he. As
to it he assumed the risk for he continued in the work
after being told three years before, as he says, by the
man in charge over him, that he would try to get him
one. The court erred in not directing a verdict for
defendant. Other errors intervened but it is not nec-
essary upon the state of the record to notice them.

The judgment of the city court of Pana is reversed.

*Reversed with a finding of fact.*

Finding of fact. We find as a fact that the injury
to the plaintiff was caused by dangers attending his
employment which were well known to him and that
he assumed the risk of those dangers.